United States Court of Appeals
Fifth Circuit

**F I L E D**

September 28, 2006

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

m 05-51198

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

SERGIO ARMANDO FIERRO-REYNA,
also known as Sergio Fierro,
also known as Sergio Fierro Reyna,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, GARZA, and CLEMENT,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Sergio Armando Fierro-Reyna pleaded guilty of illegal reentry after deportation in violation of 8 U.S.C. § 1326. He challenges his sentence. We vacate and remand for resentencing.

I.

The issue is the impact on Fierro-Reyna's sentence of his 1979 Texas conviction of aggravated assault of a police officer. The presentence investigation report ("PSR") recommended a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a), and subtracted three levels for acceptance of responsibility. The PSR recommended that the 1979 conviction be treated as a "crime of violence" under U.S.S.-G. § 2L1.2(b)(1)(A)(ii), thus adding sixteen to

the offense level. With a total offense level of 21 and a criminal history category of V based on eleven criminal history points, Fierro-Reyna's guideline range was 70 to 87 months' incarceration. The court overruled Fierro-Reyna's objections to the PSR and sentenced him to 87 months and a three-year term of supervised release.

On appeal Fierro-Reyna challenges the sixteen-level enhancement.[1] We must determine whether his conviction of aggravated assault of a police officer is a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii).

## II.

We review the district court's application of the sentencing guidelines *de novo*. *United States v. Vargas-Duran*, 356 F.3d 598, 602 (5th Cir. 2004) (en banc). The commentary to the guidelines enumerates offenses that qualify as crimes of violence, among which "aggravated assault" is included. U.S.S.G. § 2L1.2, cmt. n.1 (B)(iii). The commentary does not define aggravated assault.

The pertinent statute provided, in 1979, that "[a] person commits an offense if he commits assault as defined in Section 22.01 of this code and he . . . causes bodily injury to a peace officer in the lawful discharge of official duty when he knows or has been informed the person assaulted is a peace officer." TEX. PENAL CODE § 22.02(a)(2) (1974). Simple assault did not have use of force as an element.[2] *Id*. § 22.01 (1974).

Fierro-Reyna argues that because the statute merely required conduct amounting to simple assault, and the offense was elevated to aggravated assault only because of the status of the victim as a peace officer, his conviction does not come within the generic, contemporary meaning of the offense of aggravated assault and therefore does not qualify as a "crime of violence." The government first responds that because Texas labeled Fierro-Reyna's crime as aggravated assault, and aggravated assault is listed among the enumerated crimes of violence in the sentencing guidelines, no inquiry into the definition of aggravated assault is necessary. The government cites *United States v. Rayo-Valdez*, 302 F.3d 314 (5th Cir. 2002), to support its position that any conviction a state labels with the title of one of the enumerated crimes of violence automatically triggers a sentence enhancement.[3]

---

[1] Fierro-Reyna makes one other argument, but only to preserve it for appeal. The indictment charged him under 8 U.S.C. § 1326(a); because he had been deported following a criminal conviction, his sentence was enhanced under 8 U.S.C. § 1326(b). He contends that § 1326(b) defines a separate offense and should have been charged in the indictment. He concedes that his argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which held that enhanced penalties are sentencing factors rather than separate elements of an offense.

[2] At the time of Fierro-Reyna's conviction, a person committed assault if he (1) intentionally, knowingly, or recklessly caused bodily injury to another; (2) intentionally or knowingly threatened another with imminent bodily injury; or (3) intentionally or knowingly caused physical contact with another when he knew or should reasonably have believed that the other would regard the contact as offensive or provocative. TEX. PENAL CODE § 22.01 (1974).

[3] The government also *cites United States v. Vargas-Duran*, 356 F.3d 598 (5th Cir. 2004). The cited language comes from a special concurrence, however, and the majority holding provides no support for the government's position. The unpub-
(continued...)

In *Rayo-Valdez*, however, we considered whether the enumerated offenses must also include an element of force. We held that even if an enumerated offense does not include an element of force, it remains a crime of violence precisely because it is enumerated. *Rayo-Valdez*, 302 F.3d at 317. We did not discuss a method for determining whether a given conviction falls within one of the enumerated offense categories; that is the issue we address now.

Contrary to the government's position, we have established a standard by which to determine whether a state conviction qualifies as an enumerated offense, regardless of how the conviction is labeled by the state. Because the enumerated offenses are not defined, we use a "common sense approach" and give the offenses their "generic, contemporary meaning." *United States v. Sanchez-Ruedas*, 452 F.3d 409, 412 (5th Cir. 2006) (citations omitted). We then determine whether the state conviction falls under the generic, contemporary meaning of the enumerated offense. *See, e.g.*, *United States v. Izaguirre-Flores*, 405 F.3d 270, 274-76 (5th Cir. 2005).[4] We therefore

reject the government's contention that Fierro-Reyna's conviction is a crime of violence merely because Texas categorized the offense as aggravated assault.

We must decide whether the conviction comes under the generic contemporary meaning of aggravated assault. To establish the generic contemporary meaning of an enumerated offense, we consider, *inter alia*, the Model Penal Code, Professors LaFave's and Scott's treatises, modern state codes, and dictionaries. *Dominguez-Ochoa*, 386 F.3d at 643-45.

When comparing the state conviction with the generic, contemporary meaning of the crime, we examine the elements of the statute of conviction rather than the specifics of the defendant's conduct. *United States v. Fernandez-Cusco*, 447 F.3d 382, 385 (5th Cir. 2006). We look only to the particular subdivision of the statute under which the defendant was convicted. *Id*. "When the statute of conviction encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense," the conviction is not a crime of violence as a matter of law. *Izaguirre-Flores*, 405 F.3d at 276–77.

---

[3](...continued)
lished cases to which the government points were decided under a plain error standard and thus have very little instructive value for a court engaged in a *de novo* review of the application of the sentencing guidelines.

[4] The decision in *Taylor v. United States*, 495 U.S. 575 (1990), is the source of the generic, contemporary meaning test. In the context of the Armed Career Criminal Act, the *Taylor* Court rejected the proposition that federal sentencing enhancements should be contingent on the labels states choose to place on crimes. We have summarized Taylor's impact on our crime of violence
(continued...)

---

[4](...continued)
analysis as follows:

*Taylor* instructs that where, as here, the enhancement provision does not specifically define the enumerated offense, we must define it according to its "generic, contemporary meaning" . . . and should rely on a uniform definition, regardless of the "labels employed by the various States' criminal codes."

*United States v. Dominguez-Ochoa*, 386 F.3d 639, 642-43 (5th Cir. 2004) (citing *Taylor*, 495 U.S. at 592, 598).

"Our primary source for the generic contemporary meaning of aggravated assault is the Model Penal Code." *United States v. Torres-Diaz*, 438 F.3d 529, 536 (5th Cir. 2006). The Code provides the following:

A person is guilty of aggravated assault if he: (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

MODEL PENAL CODE § 211.1(2).

The statutory subdivision under which Fierro-Reyna was convicted differs significantly from the Model Penal Code's definition of aggravated assault. Fierro-Reyna was convicted of simple assault, the sole aggravating factor being the victim's status as a police officer. *See* TEX. PENAL CODE § 22.02(a)(2) (1974).

The Model Penal Code indicates that aggravated assault involves causing "serious bodily injury," exhibiting "extreme indifference to human life," or attempting to cause bodily injury with a deadly weapon. The status of the victim, as a police officer or otherwise, is not part of this definition. Thus under the Model Penal Code, the statute under which Fierro-Reyna was convicted prohibits conduct that does not fall within the generic, contemporary definition of aggravated assault.

Likewise, Black's Law Dictionary does not list the status of the victim as a potential aggravating factor in its definition of aggravated assault, which reads as follows: "Criminal assault accompanied by circumstances that make it more severe, such as the intent to commit another crime or the intent to cause serious bodily injury, esp[ecially] by using a deadly weapon." BLACK'S LAW DICTIONARY 122 (8th ed. 2004). This definition essentially reproduces the Model Penal Code's. Although it does not purport to include an exhaustive list of aggravating factors, its failure to make any mention of the victim's status lends credence to Fierro-Reyna's position that victim status is not a part of the generic, contemporary definition of aggravated assault.

LaFave's treatise is another source we recognize as informing the generic, contemporary meaning of an enumerated offense. *See, e.g.*, *Torres-Diaz*, 438 F.3d at 536. LaFave focuses his discussion of aggravated assault on the two most common aggravating factors: the means used to commit the crime, such as use of a deadly weapon, and the consequences of the crime, such as serious bodily injury. 2 LAFAVE, SUBSTANTIVE CRIMINAL LAW § 16.2(d). The treatise notes that, in some states, the status of the victim—as a police officer, fireman, or pregnant woman, for example—raises a simple assault to aggravated assault. *Id.* §§ 16.2(d), 16.3(d). The government relies on this section of the treatise, in which LaFave cites twenty-two states that include assault on a police officer as an aggravating factor, for its argument that the generic, contemporary meaning of aggravated assault includes statutes such as the one under which Fierro-Reyna was convicted. *See id.* § 16.2(d) n.76.

Our research reveals that twenty-two is not an accurate count of the states that currently consider simple assault on a police officer to be aggravated assault. Some state statutes have been amended. Texas, Montana, and South Dakota, for example, have dispensed with the status of the victim as an aggravating factor and adopted a definition similar to the

4

Model Penal Code's.[5] Moreover, most of the states listed in LaFave's treatise use the victim's status as a police officer only to increase the punishment range for aggravated assault. In those states, the victim's status as a police officer does not turn simple assault into aggravated assault. Rather, status merely changes the severity of the punishment for the offense, where the underlying offense is already aggravated assault or aggravated battery.[6]

Only seven states explicitly categorize simple assault on a police officer as aggravated assault.[7] For purposes of determining the generic, contemporary meaning of aggravated assault, it is this number, rather than twenty-two, that more accurately estimates the number of states whose aggravated assault statutes currently resemble the Texas statute.[8]

Where only a small minority of states support a particular viewpoint regarding the generic, contemporary meaning of an enumerated offense, and where the Model Penal Code supports the contrary position, this court has rejected the position of the minority and adopted that of the Model Penal Code.[9] The bulk of authority indicates that the generic, contemporary meaning of aggravated assault does not include simple assault on a police officer. The Model Penal Code, dictionary definitions, and the criminal codes of the majority of states

---

[5] *See* TEX. PENAL CODE § 22.02 (amending the statute in 1993); MONT. CODE § 45-5-202 (amending code in 1997); S.D. CODIFIED LAWS § 22-18-1.1 (amending code in 2005).

[6] *See* CAL. PENAL CODE § 245; FLA. STAT. § 784.021; IDAHO CODE §§ 18-905, 18-915; IND. CODE §§ 35-42-2-1.5, 35-42-2-1; KAN. STAT. §§ 21-3411, 21-3415; LA. REV. STAT. § 14:37.2; MISS. CODE § 97-3-7; NEV. REV. STAT. §§ 200.471, 200.481; S.D. CODIFIED LAWS § 22-18-1.05; TENN. CODE § 39-13-102; TEX. PENAL CODE § 22.02; VA. CODE § 18.2-57; WIS. STAT. § 940.20.

[7] *See* ARIZ. REV. STAT. § 13-1204; ARK. CODE. § 5-13-202; DEL. CODE tit. 11, § 613; 720 ILL. COMP. STAT. 5/12-4; N.J. STAT. § 2C:12-1; N.Y. PENAL LAW § 120.05; 18 PA. CONS. STAT. § 2702.

[8] This number does not include states that provide for the status of the victim as an aggravating factor where the victim is someone other than a police officer. LAFAVE, SUBSTANTIVE CRIMINAL
(continued...)

[8](...continued)
LAW § 16.2(d) nn. 77–85. *See* ALA. CODE § 13A-6-21(a)(5) (making simple assault an aggravated assault where victim is, *e.g.*, a teacher); FLA. STAT. ANN. § 784.045 (same, where the victim is pregnant); N.C. GEN. STAT. § 14-33(c)(2), (3) (same, where victim is, *e.g.*, female or a child); OKLA. STAT. tit. 21, § 646(A)(2) (same, where victim is elderly); WYO. STAT. § 6-2-502(a)(iv) (same, where victim is pregnant).

Thus if the inquiry is broadened to whether the generic, contemporary meaning of aggravated assault includes simple assault on not just a police officer but any statutorily-recognized victim, there are somewhere on the order of twelve to fifteen states that recognize victim status generally. It is unnecessary to determine whether the analysis should consider these states; whatever the number, it is only a small minority of states that would consider Fierro-Reyna's conviction to be an aggravated assault. The result of our inquiry into the generic, contemporary meaning of aggravated assault would not be affected even if we were to include these states in our analysis.

[9] *See Dominguez-Ochoa*, 386 F.3d at 643, 646 (finding that, because only nine states define manslaughter with a *mens rea* of criminal negligence but a larger number define manslaughter with recklessness, generic manslaughter requires a *mens rea* of recklessness).

uphold this position. We conclude that the generic, contemporary meaning of aggravated assault involves aggravating factors such as use of a deadly weapon and causation of serious bodily injury and does not include considerations regarding the victim's status as a police officer.

Because the statutory section under which Fierro-Reyna was convicted prohibits behavior that is not within the generic, contemporary meaning of aggravated assault as it is used in U.S.S.G. § 2L1.2, his conviction does not qualify as a crime of violence, so his sentence was improperly enhanced by sixteen levels.

The sentence is VACATED, and this matter is REMANDED for resentencing.