# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 5, 2012

No. 11-20322

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GUADALUPE VILLANUEVA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-cr-00010-ALL

Before KING, HIGGINBOTHAM, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Guadalupe Villanueva pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326. He now appeals his sentence contending that the district court erred in imposing a 16-level "crime of violence" enhancement based on his 1991 Texas conviction for the aggravated assault of a peace officer. We find that his prior conviction for aggravated assault constitutes a "crime of violence" under our precedents interpreting the Sentencing Guidelines and that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20322

enhancement was properly applied. Therefore, we AFFIRM the sentence imposed by the district court on Villanueva.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This sole issue in this case is whether the sentence meted out to Defendant-Appellant Guadalupe Villanueva ("Villanueva") was proper. On July 25, 1991, Villanueva, a citizen of Mexico, was convicted of aggravated assault under the Texas Penal Code and sentenced to 12 years imprisonment. He was subsequently deported to Mexico on November 24, 1993, but at some point crossed back into the United States and was convicted of illegal reentry in 1996. He was deported to Mexico on October 3, 2001. However, on November 22, 2010, Villanueva was found in Huntsville, Texas. Following his arrest in Huntsville, Villanueva was charged with the present count of illegal reentry following his deportation after having been convicted of an aggravated felony. *See* 8 U.S.C. §§ 1326(a), (b)(2). On January 31, 2011, Villanueva pleaded guilty to this offense in district court. He did not sign a plea agreement or otherwise waive his appellate rights.

The presentence investigation report ("PSR") calculated Villanueva's sentence for the offense as follows. The base offense level for a violation of 8 U.S.C. § 1326(a) is 8. *See* U.S.S.G. § 2L1.2(a). The PSR then added 16 levels to the base offense level because "Villanueva was previously deported after a conviction for a felony that is a crime of violence, to-wit; [the 1991] aggravated assault."[1] *See id.* § 2L1.2(b)(1)(A)(ii) ("If the defendant previously was

---

[1] The PSR's account of this crime, which Villanueva does not contest, is based on the complaint and is as follows:

[O]n August 10, 1990, while being transported to the county jail after his arrest [for purchasing marijuana], Villanueva pulled out a .38 caliber revolver, pointed it at officers, and told them that if they did not stop the vehicle and release him he would kill them. Villanueva was overpowered by officers and relieved of the weapon. Villanueva was originally charged with criminal attempt[ed] capital murder; but, he pled guilty to the lesser charge . . . . Count 1, which charged

deported . . . after . . . a conviction for a felony that is . . . a crime of violence . . . increase [the offense level] by 16 levels . . . ."). Under U.S.S.G. § 3E1.1, Villanueva had 3 offense levels deducted for his acceptance of responsibility. These adjustments left him with a total offense level of 21. Combined with his criminal history category of VI, the PSR arrived at a Guidelines' recommended range of imprisonment of 77–96 months.

Villanueva timely submitted a written objection to the PSR, arguing that his Texas aggravated assault conviction did not qualify as a "crime of violence" under the commentary accompanying U.S.S.G. § 2L1.2 and that, therefore, he should not have received the 16-level enhancement. Villanueva contended, citing *United States v. Fierro–Reyna*, 466 F.3d 324, 327–29 (5th Cir. 2006), that Fifth Circuit precedent held that where, as here, an otherwise simple assault made "aggravated" solely on the basis of the victim's status as a peace officer does not qualify as a "crime of violence."

The district court was unpersuaded by Villanueva's arguments. The court reasoned that "if the [Texas] statute permits . . . the finding that the brandishing of a weapon during the course of a threat makes it an aggravated assault, then [it] would err . . . on the side of saying that this is . . . an aggravated assault . . . on a peace officer." The district court gave Villanueva "seven or eight months' credit" and then sentenced him to 70 months' imprisonment followed by a three-year term of supervised release.

Villanueva now timely appeals his sentence on the sole ground that the district court erred in imposing the 16-level enhancement for his 1991 Texas conviction for aggravated assault on a peace officer.

## II. DISCUSSION

A challenge to district court's determination that a prior conviction is a

---

aggravated assault, was dismissed, as Villanueva was convicted on Count 2 which charged aggravated assault on a peace officer.

"crime of violence" is an application of the Guidelines, and "[w]e review *de novo* the district court's interpretation or application of the Sentencing Guidelines." *United States v. Asencio–Perdomo*, 674 F.3d 444, 446 (5th Cir. 2012) (citation omitted). Section 2L1.2(b)(1)(A)(ii) of the Sentencing Guidelines provides for a 16-level enhancement "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence." The commentary to § 2L1.2 defines the term "crime of violence" in two relevant ways.[2] First, as "any of the following offenses under federal, state, or local law . . . [including] aggravated assault." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Second, as "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* Accordingly, Villanueva's prior offense is a "crime of violence"—and § 2L1.2's 16-level enhancement was correctly applied—if it "(1) has physical force as an element, or (2) qualifies as one of the enumerated offenses," such as aggravated assault in this case. *United States v. Herrera*, 647 F.3d 172, 175 (5th Cir. 2011) (internal quotation marks omitted). "This court uses different tests when analyzing whether a particular offense amounts to a [crime of violence], and the test used depends on whether the offense is an enumerated one or has physical force as an element." *United States v. Moreno–Florean*, 542 F.3d 445, 449 (5th Cir. 2008) (citing *United States v. Mendoza–Sanchez*, 456 F.3d 479, 481–82 (5th Cir. 2006) (per curiam)). We commence by examining whether Villanueva's 1991 conviction falls within the enumerated list of "crimes of violence."

The fact that Villanueva was convicted of a crime that Texas has labeled "aggravated assault" does not automatically transform it into an enumerated

---

[2] "[T]he commentary to . . . § 2L1.2 . . . is binding, and equivalent in force to the guideline language itself, as long as the language and the commentary are not inconsistent." *United States v. Rayo–Valdez*, 302 F.3d 314, 318 n.5 (5th Cir. 2002).

No. 11-20322

"crime of violence." *Fierro–Reyna*, 466 F.3d at 327; *United States v. Sanchez*, 667 F.3d 555, 560 (5th Cir. 2012) ("We should rely on a uniform definition, regardless of the labels employed by the various States' criminal codes." (footnote and internal quotation marks omitted)). Rather, "[b]ecause [§ 2L1.2's] enumerated offenses are not defined, we use a 'common sense approach' and give the offenses their 'generic, contemporary meaning.'" *Fierro–Reyna*, 466 F.3d at 327 (quoting *United States v. Sanchez–Ruedas*, 452 F.3d 409, 412 (5th Cir. 2006) (citations omitted)). In doing so, we normally only look "to the particular subdivision of the statute under which the defendant was convicted rather than the defendant's specific conduct." *United States v. Diaz–Corado*, 648 F.3d 290, 293 (5th Cir. 2011) (per curiam). However, if the statute of conviction contains a series of disjunctive elements, we may look beyond the statute to certain records made or used in adjudicating guilt to determine which subpart of the statute formed the basis of the conviction. *See, e.g.*, *United States v. Mungia–Portillo*, 484 F.3d 813, 815 (5th Cir. 2007). In such cases, the records we consider are "generally limited to the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented." *United States v. Murillo–Lopez*, 444 F.3d 337, 340 (5th Cir. 2006) (internal quotation marks omitted).

Villanueva was convicted under the 1990 version of the Texas aggravated assault statute,[3] which provided that:

> (a) A person commits an offense if the person commits assault as defined in Section 22.01 of this code and the person:
>
>> (1) causes serious bodily injury to another, including the person's spouse; or

---

[3] The statute has since been amended. *See* TEX. PENAL CODE § 22.02 (2009). We have found convictions under more recent versions of the statute to qualify as "crimes of violence." *See, e.g.*, *United States v. Guillen–Alvarez*, 489 F.3d 197, 200–01 (5th Cir. 2007).

(2) threatens with a deadly weapon or threatens to cause bodily injury or causes bodily injury to a . . . peace officer . . . . when the person knows or has been informed the person assaulted is . . . a peace officer . . . ; or

(3) causes bodily injury to a participant in a court proceeding when the person knows or has been informed the person assaulted is a participant in a court proceeding . . . ; or

(4) uses a deadly weapon.

TEX. PENAL CODE § 22.02(a) (1990).[4] The statute also provided that "[a]n offense under this section is a felony of the third degree, unless the offense is committed under Subdivision (2) of Subsection (a) of this section and the person uses a deadly weapon, in which event the offense is a felony of the first degree." *Id.* § 22.02(c).

The aggravated assault indictment against Villanueva stated in relevant part:

[T]hat GUADALUPE VILLANUEVA on or about the 10th day of August, 1990, . . . did then and there unlawfully, intentionally and knowingly use a deadly weapon, to-wit: a firearm, and did then and there threaten JUAN VALLEJO, a peace officer in the lawful discharge of his official duty, with imminent bodily injury by the use of said weapon when GUADALUPE VILLANUEVA knew that the said JUAN VALLEJO was a peace officer.

And the Grand Jurors do further present that the said defendant did use and exhibit a deadly weapon, to-wit: a firearm,

---

[4] The crime of "assault" was defined in 1990 as:

(1) intentionally, knowingly, or recklessly caus[ing] bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threaten[ing] another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE § 22.01(a) (1990). Villanueva's aggravated assault conviction was based on an incorporated simple assault under § 22.01(a)(2).

during the commission of the felony offense.

There is no indication that Villanueva objected to these findings at the time they were made nor does he contest them now. Importantly, the 1991 judgment of conviction reflects that Villanueva was convicted of a third-degree felony and also reports a finding that Villanueva had used a firearm during the offense. It does not, however, indicate which subpart of the statute Villanueva was convicted under, referring only to § 22.02.

Given that the 1991 aggravated assault statute was composed of various subparts, we must determine which subpart formed the basis for Villanueva's 1991 conviction. Villanueva posits that the statute provides four possible bases for his conviction: threatening a peace officer with bodily injury or threatening a peace officer with a deadly weapon—both third-degree felonies—or the same two acts charged as first degree felonies under the deadly weapon enhancement in the 1990 version of § 22.02(c). Villanueva further observes that his conviction was for a third-degree felony, but that the indictment does not further specify whether this was for threatening a peace officer with bodily injury or threatening a peace officer with a deadly weapon.[5] He argues that we should find the former—and effectively disregard the deadly weapon finding—directing us to precedent "conclud[ing] that the generic, contemporary meaning of aggravated assault involves aggravating factors such as use of a deadly weapon and causation of serious bodily injury and does not include considerations regarding the victim's status as a police officer." *Fierro–Reyna*, 466 F.3d at 329. This precedent, he asserts, forecloses a finding that his 1991 conviction qualifies as an enumerated "crime of violence" because his assault was aggravated only on

---

[5] Such ambiguity is normally unproblematic given that in Texas "the State is only required to present evidence sufficient to support the conviction, [and] the State need not present evidence that the defendant committed the offense according to each of the means alleged in the indictment." *United States v. Morales–Martinez*, 496 F.3d 356, 360 (5th Cir. 2007).

the basis of the victim's status as a peace officer.

We read Villanueva's charging and plea documents differently, however. Under the 1990 version of § 22.02(a)(4), "[a] person commit[ted] an [aggravated assault] if the person commit[ted] assault as defined in Section 22.01 of this code and the person . . . use[d] a deadly weapon." TEX. PENAL CODE. § 22.02(a)(4) (1990). Under § 22.02(c), this crime constituted a third-degree felony. *Id.* § 22.02(c). We find it more reasonable to conclude, as the probation officer did, that Villanueva was convicted of the third-degree felony of aggravated assault for committing a simple assault—"threaten[ing] another with imminent bodily harm" under Texas Penal Code § 22.01(a)(2)—while using a deadly weapon pursuant to § 22.02(a)(4). *See, e.g.*, *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986) (en banc) (describing elements of predecessor to § 22.02(a)(4)).[6] Under this reading, the fact that Villanueva's victim was a peace officer was unnecessary for transforming his simple assault into an aggravated assault.[7]

---

[6] The indictment makes clear that Villanueva's 1991 conviction involved threatening with a deadly weapon. A typical definition of "use" is "to put into action or service." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2523 (13th ed. 1961). Obviously, then, by "threatening with" a deadly weapon, one is "putting into action" said weapon. But we are not alone in concluding so. The Texas Court of Criminal Appeals has employed this exact reasoning when interpreting similar statutory provisions involving the "use[] or exhibit[ion] of a deadly weapon." *See Patterson v. State*, 769 S.W.2d 938, 940–41 (Tex. Crim. App. 1989) (en banc) (relying on similar dictionary definition of "use" to interpret statutory provision). In such contexts, the Court of Criminal Appeals has concluded that the term "'used . . . a deadly weapon' during the commission of the offense[,] means that the deadly weapon was employed or utilized in order to achieve its purpose. . . . [This] extends . . . to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Id.* at 941 (first alteration in original) (internal quotation marks omitted). This capacious understanding likely informed the Court of Criminal Appeals' decision to affirm the conviction of a defendant under an identical, previous version of § 22.02(a)(4) on the ground that "[t]he mere fact that appellant displayed the shotgun and pointed it in [the victim's] general direction is sufficient 'use.'" *May v. State*, 660 S.W.2d 888, 889 (Tex. App.—1983), *aff'd*, 722 S.W.2d 699 (Tex. Crim. App. 1984).

[7] In the addendum to the PSR, the probation officer explained this well:

Since the former (like the current) Texas offense of aggravated assault under Texas Penal Code § 22.02 incorporates § 22.01 (Assault) into its definition, the

8

No. 11-20322

Our confidence in this reading is bolstered by its consistency with the wordings of the indictment and the judgment, as well as the fact that Villanueva was convicted of a third-degree, rather than first-degree, felony, with the judgment reflecting a deadly weapon finding.

This finding defeats Villanueva's argument. Our previous precedents make clear that an otherwise simple assault that is made aggravated by the use of a deadly weapon is clearly a "crime of violence." In *United States v. Guillen–Alvarez*, 489 F.3d 197, 199 (5th Cir. 2007), we considered a more recent version of the Texas aggravated assault statute, which provided that:

> (a) A person commits an offense [of aggravated assault] if the person commits assault as defined in Section 22.01 and the person:
>
>> (1) causes serious bodily injury to another, including the person's spouse; or
>>
>> (2) uses or exhibits a deadly weapon during the commission of the assault.

*Id.* (alteration in original) (quoting TEX. PENAL CODE § 22.02(a) (2000)). We concluded that the defendant's "aggravated assault conviction [under the above-quoted statute] qualifies as a conviction for the enumerated offense of 'aggravated assault,' and therefore as a conviction for a crime of violence [under § 2L1.2]." *Id.* Subsequent cases have drawn on *Guillen–Alvarez* to conclude that a conviction under § 22.02 for threatening imminent bodily injury with a deadly weapon—Villanueva's exact offense—qualifies as a "crime of violence." *United*

---

defendant [i.e., Villanueva] violated § 22.01(a)(2) and § 22.02(a)(2) and (4). In other words, he intentionally or knowingly threatened another with imminent bodily injury (the 22.01 component) coupled with two additional acts: threatened with a deadly weapon or threatened to cause bodily injury to a peace officer (a)(2) *and* used a deadly weapon (a)(4) (the 22.02 component). While 22.02 only requires one of four aggravating factors to elevate an assault to that of aggravated assault, the defendant met two factors, one of which involved the threat upon a peace officer. Thus, his use of a deadly weapon means his assault was aggravated on that fact alone; it was not merely aggravated because the victim was a peace officer.

9

*States v. Garcia–Ramirez*, 230 F. App'x 458, 459–60 (5th Cir. 2007) (unpublished) (per curiam). The precedent that Villanueva cites—*United States v. Fierro–Reyna*—did not address a defendant who threatened with a deadly weapon and so is, at best, inapposite to his circumstances. Indeed, it may even undercut his position, as we held in that case that "the generic, contemporary meaning of aggravated assault involves aggravating factors *such as use of a deadly weapon*." *Fierro–Reyna*, 466 F.3d at 329 (emphasis added). Given that we find that Villanueva's aggravated assault conviction rested on his use of a deadly weapon, *Fierro–Reyna* provides no support for vacating his sentence.[8] The district court properly concluded that Villanueva's 1991 aggravated assault conviction constituted a conviction for a "crime of violence" and therefore the district court correctly applied § 2L1.2's 16-level enhancement.

## III. CONCLUSION

In light of the foregoing, we AFFIRM the sentence imposed by the district court.

---

[8] Because we conclude that Villanueva's 1991 conviction for aggravated assault was a "crime of violence" for purposes of § 2L1.2 of the Guidelines, we have no need to decide whether this offense has as an element the use, attempted use, or threatened use of force against the person of another. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii); *Guillen–Alvarez*, 489 F.3d at 199 n.2.