# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10305

United States Court of Appeals
Fifth Circuit

**FILED**
February 24, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

JOSE ALFREDO SANCHEZ-SANCHEZ

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, SMITH, and GRAVES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Jose Alfredo Sanchez-Sanchez appeals his sentence and challenges the district court's application of an enhancement based on a prior Texas conviction for a crime of violence. We are asked to determine whether the district court was precluded from relying on a Texas state court's facially inconsistent judgment of conviction, which recited Sanchez-Sanchez's plea of guilty to aggravated assault with a deadly weapon but made no separate "affirmative findings" on the use of a deadly weapon. Finding the inconsistency fully explained by the law of Texas, which provides that entry of a separate affirmative deadly weapon finding is relevant only to sentencing and does not alter the underlying offense of conviction, we affirm.

No. 14-10305

I.

Sanchez-Sanchez pled guilty in 2013 to illegal reentry following deportation in violation of 8 U.S.C. § 1326. His presentence report (PSR) assigned a total offense level of 18, which included a 12-level enhancement pursuant to U.S.S.G. ("Guidelines") § 2L1.2(b)(1)(A)(ii) based on Sanchez-Sanchez's 1990 Texas felony conviction for aggravated assault with a deadly weapon. The PSR characterized the offense underlying the prior Texas conviction as a qualifying "crime of violence."[1]

Attached to the PSR were state court documents indicating that Sanchez-Sanchez was indicted in Texas in 1989 and charged with "knowingly and intentionally us[ing] a deadly weapon, to-wit: a knife, to threaten Mario Cervantes, with imminent bodily injury by use of the said deadly weapon."[2] He agreed to plead guilty to the offense charged in the indictment in exchange for two years of probation with deferred adjudication. His written plea agreement expressly stated, as an "[a]dditional provision[ ] of the agreement[,] no deadly weapon."[3] Sanchez-Sanchez subsequently violated the conditions of his probation and the court proceeded to adjudicate his guilt in November 1990.[4] The court's written judgment form recited, in a space marked, "OFFENSE CONVICTED OF," that Sanchez-Sanchez was convicted of aggravated assault with a deadly weapon. Nevertheless, consistent with the terms of his plea agreement, in a space marked, "FINDINGS ON USE OF DEADLY WEAPON,"

---

[1] U.S.S.G § 2L1.2, cmt. n.1(B)(iii).

[2] R. at 117.

[3] *Id.*

[4] Under Texas law, "[u]nlike regular probation, a deferred adjudication does not constitute a final conviction . . . [o]nly upon revocation (i.e. adjudication of guilt) does a deferred adjudication become a conviction." *Jordan v. State*, 36 S.W.3d 871, 876 (Tex. Crim. App. 2001) (citations omitted).

No. 14-10305

the judgment expressed "no findings."[5] Although the state court documents do not identify the statute of conviction, the parties agree that Sanchez-Sanchez was convicted under the 1988 version of Texas Penal Code § 22.02(a), which criminalizes "Aggravated Assault."

At sentencing for Sanchez-Sanchez's illegal reentry conviction, the district court concluded that the 1990 aggravated assault conviction qualified as a crime of violence under section 2L1.2(b)(1)(A)(ii) and applied the 12-level enhancement. Counsel for Sanchez-Sanchez did not object to the enhancement or the characterization of the underlying offense as a crime of violence. Sanchez-Sanchez timely appealed.

II.

The Guidelines provide for a 12-level enhancement to a defendant's base offense level if he was previously deported after a conviction for a felony "crime of violence."[6] Relevant for our purposes, the application note to section 2L1.2 defines the term "crime of violence" to include, among other enumerated offenses, "aggravated assault."[7] Because the Guidelines "do not define the enumerated crimes of violence," we "adopt[ ] a common sense approach,

---

[5] The PSR also contained a second plea agreement, dated November 28, 1990—the same date as the judgment of conviction. R. at 124. In contrast to the original plea agreement, in the second agreement the space marked, "[a]dditional provisions of the agreement," was left blank. In Texas, when a defendant violates the conditions of probation and the court proceeds with an adjudication of guilt, the trial judge "has no further obligation to comply with the [original] plea bargain[ ]." *Ex parte Huskins*, 176 S.W.3d 818, 819 (Tex. Crim. App. 2005) (citation omitted). Yet consistent with Sanchez-Sanchez's original plea agreement, the written judgment indicated "no findings" as to deadly weapon. We therefore need not and do not consider what effect, if any, the second agreement had on the validity of the original agreement.

[6] U.S.S.G. § 2L1.2(b)(1)(A)(ii). Sanchez-Sanchez does not dispute that he was deported after the 1990 conviction.

[7] *Id.* § 2L1.2, cmt. n. 1(B)(iii).

defining each crime by its generic, contemporary meaning."[8] We must do so even where, as here, the state's label for an offense is identical to that enumerated in the Guidelines.[9] We have previously defined the generic meaning of "aggravated assault," looking to contemporary resources like the Model Penal Code, relevant treatises, modern state codes, and dictionary definitions.[10] In the Fifth Circuit, "[t]he generic, contemporary meaning of aggravated assault is an assault carried out under certain aggravating circumstances."[11] Among those circumstances we have listed "use of a deadly weapon."[12]

In determining whether a state conviction constitutes "aggravated assault" in the generic sense, "we examine the elements of the statute of the conviction rather than the specifics of the defendant's conduct."[13] This is *Taylor*'s categorical approach.[14] If the statutory definition of the prior offense criminalizes conduct that would not constitute a qualifying offense, then the statute as a whole does not categorically qualify. If the statutory definition

---

[8] *United States v. Martiez-Flores*, 720 F.3d 293, 295-96 (5th Cir. 2013) (quoting *United States v. Sanchez-Ruedas*, 452 F.3d 409, 412 (5th Cir. 2006)) (internal quotation marks omitted).

[9] *United States v. Ramirez*, 557 F.3d 200, 205 (5th Cir. 2009) ("State-law labels do not control this inquiry because the [crime of violence] adjustment incorporates crimes with certain elements, not crimes that happen to have the same label under state law.") (citation omitted).

[10] *United States v. Esparz-Perez*, 681 F.3d 228, 229-30 (5th Cir. 2012) (citation omitted).

[11] *Id.* at 233 (citations omitted).

[12] *United States v. Fierro-Reyna*, 466 F.3d 324, 329 (5th Cir. 2006); *see also United States v. Mungia-Portillo*, 484 F.3d 813, 817 (5th Cir. 2007) (explaining that Tennessee defines aggravated assault to "include[ ] the two most common aggravating factors, the causation of serious bodily injury and the use of a deadly weapon"); MODEL PENAL CODE § 211.1(2) ("A person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."); 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 16.2(d) (2d. ed.) (noting that aggravated assault includes "assault with a dangerous or deadly weapon") (alterations and citation omitted).

[13] *Martiez-Flores*, 720 F.3d at 296 (quoting *Fierro-Reyna*, 466 F.3d at 327).

[14] *See Taylor v. United States*, 495 U.S. 575, 602 (1990).

instead "falls within the generic definition of the listed offense, then the prior offense is a [qualifying] crime of violence."[15]

But some conviction statutes evade categorical classification under *Taylor*. In some cases "a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction."[16] If at least one alternative element constitutes "aggravated assault" but at least one other alternative element does not, then the categorical approach cannot provide the answer as to whether a conviction under the statute qualifies. Although "the whole of the statute cannot be read to constitute a crime of violence,"[17] it is nevertheless possible for a conviction under the statute to qualify.

Section 22.02 is one such statute. At the time of Sanchez-Sanchez's offense, April 27, 1989, section 22.02(a) provided that a person commits aggravated assault if he commits assault under section 22.01 and he:

(1) causes serious bodily injury to another, including the person's spouse;

(2) threatens with a deadly weapon or causes bodily injury to [specified employees, including peace officers], when the person knows or has been informed the person assaulted is [one of the specified public employees]: (A) while the [specified public employee] is lawfully discharging an official duty; or (B) in retaliation for or on account of an exercise of official power or performance of an official duty as a [specified public employee];

(3) causes bodily injury to a participant in a court proceeding when the person knows or has been informed the person assaulted is a participant in a court proceeding: (A) while the injured person is lawfully discharging an official duty; or (B)

---

[15] *United States v. Cortez-Rocha*, 552 F. App'x 322, 324 (5th Cir. 2014).

[16] *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

[17] *Cortez-Rocha*, 552 F. App'x at 326.

in retaliation for or on account of the injured person's having exercised an official power or performed an official duty as a participant in a court proceeding; or

(4) uses a deadly weapon.[18]

At least one offense criminalized by section 22.02 constitutes "aggravated assault" in the generic sense defined above. A conviction under section 22.02(a)(4), which criminalizes assault attended by use of a deadly weapon, would qualify as a crime of violence.[19] But some of the alternative offenses criminalized under section 22.02 do not constitute "aggravated assault." We have held that the generic definition of aggravated assault does not include "simple assault on a [peace] officer."[20] A conviction under 22.02(a)(2) for causing bodily injury to a peace officer, without the use of a deadly weapon, would therefore not qualify. Moreover, we have previously considered the specific language of section 22.02 in effect in 1974 and 1991, both of which contain language substantially similar to the 1988 version of the statute.[21] In both cases, we concluded that there are ways to violate section 22.02(a) that would not quality as a crime of violence.[22]

The Supreme Court has developed the "modified" categorical approach to help "effectuate the categorical analysis" where, as here, a defendant pleads guilty to an offense criminalized by a statute that evades categorical

---

[18] Texas Penal Code § 22.02 (West 1988) (titled "Aggravated Assault), *quoted as amended by* Acts 1987, 70th Leg., ch. 1101, § 12, eff. Sept. 1, 1987.

[19] *Fierro-Reyna*, 466 F.3d at 329; *see United States v. Guillen-Alvarez*, 489 F.3d 197, 198-201 (5th Cir. 2007).

[20] *Fierro-Reyna*, 466 F.3d at 329.

[21] *See Cortez-Rocha*, 552 F. App'x at 326; *Fierro-Reyna*, 466 F.3d at 326.

[22] *Cortez-Rocha*, 552 F. App'x at 326 (holding that "assault under section 22.01 and a section 22.02 aggravating factor could be committed absent the use of destructive violent force"); *Fierro-Reyna*, 466 F.3d at 326 (holding that section 22.02(a)(2) can be violated in a way that is "simple assault" and thus not a qualifying crime of violence under section 2L1.2).

No. 14-10305

classification under *Taylor*.[23] Under the modified approach, a sentencing court "may look beyond the statutory elements" to determine whether a conviction qualifies.[24] This inquiry "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."[25] These are known as "*Shepard*" documents. We examine *Shepard* documents for the limited purpose of "determin[ing] which of a statute's alternative elements formed the basis of the defendant's prior conviction."[26] We do not depart from the elements-based approach to look to the defendant's specific conduct.[27] It is the government's burden to establish, by introduction of *Shepard* documents, "a factual predicate justifying a sentencing enhancement."[28]

Sanchez-Sanchez concedes that the indictment, considered alone, would establish a conviction for aggravated assault with a deadly weapon under section 22.02(a)(4).[29] He argues, though, that that the contradictory statements on the face of the judgment regarding the use of a deadly weapon, read in conjunction with the terms of his original plea agreement, "affirmatively cast[ ] doubt on"[30] whether he was ultimately convicted under that subsection. The essence of his claim is that the government has not eliminated the possibility that, although charged with an offense under section

---

[23] *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

[24] *Id.* at 2284.

[25] *Shepard v. United States*, 544 U.S. 13, 16 (2005).

[26] *Descamps*, 133 S. Ct. at 2284-85 ("By reviewing the extra-statutory materials . . . courts c[an] discover which statutory phrase contained within a statute listing several different crimes[ ] covered a prior conviction.") (internal quotation marks and citations omitted).

[27] *United States v. Herrera-Alvarez*, 753 F.3d 132, 137-38 (5th Cir. 2014).

[28] *See id.* at 135 (quoting *United States v. Bonilla*, 524 F.3d 647, 655 (5th Cir. 2008)) (alterations and quotation marks omitted).

[29] Appellant's Brief at 13.

[30] *See United States v. Torres-Diaz*, 438 F.3d 529, 534 (5th Cir. 2006).

7

No. 14-10305

22.02(a)(4), he pled guilty to a non-qualifying alternative offense. We find the inconsistency fully explained by the law of Texas and conclude that the district court committed no error. We need not and do not address the applicable standard of review.

### III.

To resolve this issue we must unravel the "labyrinthine procedure followed in Texas state courts" by which a defendant can stand convicted of an offense involving a deadly weapon even where the trial judge does not enter a separate and affirmative deadly weapon finding.[31] We have held that "[i]n Texas, an 'affirmative finding' that a deadly weapon was used is significant *only* for the determination of whether . . . probation or parole can be granted. In other words, the failure to make such an affirmative finding relates to sentencing, not to the underlying offense conduct."[32] We hold the same today, and in explanation we trace the origins of this seeming inconsistency in the judgment of conviction.

At the time of Sanchez-Sanchez's conviction, article 42.12 of the Texas Code of Criminal Procedure, section 3g(a)(2), required that, "[u]pon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense . . . the trial court shall enter the finding in the judgment of the court."[33] In turn, article 42.18, section 8, provided, "if the judgment contains an affirmative finding under Section [3g(a)(2)] of this Article, [the prisoner] is not eligible for release on parole until his actual

---

[31] *Waters v. Quarterman*, No. 3-08-CV-360-P, 2008 WL 4427223, at *2 (N.D. Tex. September 26, 2008).

[32] *Sam v. I.N.S.*, 16 F.3d 1216, 1994 WL 57627, at *2 n.2 (5th Cir. Feb. 17, 1994) (unpublished) (citing *Ex parte Lucke*, 742 S.W.2d 818, 819-20 (Tex. Ct. App.—Houston (1st) 1987)). Although *Sam* is unpublished, it is nonetheless fully precedential and binding because it was issued before January 1, 1996. *See* 5th Cir. R. 47.5.3.

[33] *Ex parte Poe*, 751 S.W.2d 873, 875 (Tex. Crim. App. 1988) (en banc).

calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less . . . ."[34] In *Lafleur v. State*,[35] the Texas Court of Criminal Appeals shed light on these provisions:

> In 1977, the Texas Legislature proposed adding a "deadly weapon" provision to article 42.12 . . . This measure would have numerous legal consequences, including the fact that "where a deadly weapon has been exhibited during a commission of an offense, the parole date is figured on flat time alone without consideration of good time." During that session, the Texas Department of Corrections expressed concern to the Legislature that it would be unable to determine whether a particular inmate was subject to a deadly weapon finding if there were no express "deadly weapon" language contained in the indictment or elsewhere. Thus, the Legislature wrote the bill:
>
>> so that when the trier of fact found that a deadly weapon or firearm was used in the commission of the offense, that finding would be entered on the judgment, which would then be sent with the order of commitment. Thus, the Department of Corrections would know how to compute the defendant's time for parole purposes.
>
> The provision was added as article 42.12, Section 3f(a)(2) [and later recodified at section 3g(a)(2)]. Providing a space in the written judgment form to record the factfinder's deadly weapon finding solved the notice problem for prison authorities.[36]

The space in the written judgment form marked "FINDINGS ON USE OF DEADLY WEAPON" thus provided a means for the trial judge to enter an

---

[34] *Polk v. State*, 693 S.W.2d 391, 392 (Tex. Crim. App. 1985) (en banc) (quoting Tex. Code Crim. P. 42.12, § 15(b)); *see Ex parte Poe*, 751 S.W.2d at 874 n.1 & 2 (explaining that section 3f(a)(2) was recodified at section 3g(a)(2), and that section 15(b) was recodified at article 42.18, section 8).

[35] 106 S.W.3d 91 (Tex. Ct. Crim. App. 2003) (en banc).

[36] *Id.* at 94-95 (quoting *Polk v. State*, 693 S.W.2d at 393 n.1).

affirmative finding to aid prison authorities in calculating a prisoner's eligibility for probation and parole.

But this approach did not resolve all ambiguity regarding whether an affirmative finding had been made and entered. Over time, two lines of doctrine emerged as Texas courts addressed circumstances where section 3g(a)(2) failed to accomplish its purpose. One line deals with the "making" of an affirmative deadly weapon finding; the other with its subsequent entry into the judgment by the trial court.[37] The first line addresses whether a jury, as factfinder, has made an affirmative deadly weapon finding. This line defines the bounds of a trial judge's authority to enter—and her discretion to not enter—such finding in the judgment. The seminal cases are *Polk v. State* and *Ex parte Poe*. In *Polk*, the Court of Criminal Appeals addressed when a trial judge may enter a deadly weapon finding after a jury trial:

> Where the jury is the trier of fact, the trial court may not properly enter that they have made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless:
>
> 1) the deadly weapon or firearm has been *specifically* pled as such (using the nomenclature "deadly weapon") in the indictment (applies where the verdict reads "guilty as charged in the indictment");
>
> 2) where not specifically pled in "1)" above as a deadly weapon or firearm, the weapon pled is per se a deadly weapon or a firearm; or,
>
> 3) a special issue is submitted and answered affirmatively.[38]

---

[37] *See Hooks v. State*, 860 S.W.2d 110, 112-113 (Tex. Crim. App. 1993) (en banc).

[38] *Polk*, 693 S.W.2d at 396 (citations omitted).

No. 14-10305

Later, in *Poe*, the Court of Criminal Appeals addressed the flip side of this question: when may a trial judge *withhold* an affirmative deadly weapon finding after a jury trial?

> . . . Article 42.12, § [3g(a)(2)], clearly mandates that the trial judge enter in the judgment a finding that a deadly weapon was used or exhibited during the commission of an offense, once the trier of fact makes a proper affirmative finding as per *Polk*. In the present case, the trier of fact undoubtedly made such an affirmative finding. Once this determination had been made the trial judge was required to reflect this by making a proper entry in the judgment. The trial judge retained no discretion to do otherwise. Consequently, the failure of the trial judge to do so was not an error of judicial reasoning but rather an error of a clerical nature.[39]

In a separate line of doctrine, the Court of Criminal Appeals distinguished between "how an affirmative finding is *made*"—which it said was addressed squarely in *Polk*—and whether such finding has been *entered*.[40] The seminal cases in this line are *Ex parte Brooks* and *Hooks v. State*. In *Brooks*, the court held that "[a]lthough the jury's verdict in certain circumstances may constitute an affirmative finding being made . . . it is necessary for an affirmative finding to be entered separately and specifically in the judgment of the court by the trial court" to trigger section 3g(a)(2)'s bar to parole.[41] *Hooks* then elaborated on this principle. There, the trial court in a bench trial found the defendant guilty of aggravated assault with a deadly weapon but did not enter a separate affirmative deadly weapon finding. It suspended the defendant's sentence and ordered him released on probation. On appeal, the Court of Criminal Appeals recognized that the judgment recited as a factual matter that the offense involved a deadly weapon, but it concluded that the

---

[39] *Poe*, 751 S.W.2d at 876.

[40] *Hooks*, 860 S.W.2d at 112-13 (emphasis in original).

[41] *Ex parte Brooks*, 722 S.W.2d 140, 142 (Tex. Crim. App. 1986) (citing *Polk*).

trial court was not barred from placing the defendant on probation, because "the trial court did not *enter* 'a separate and specific affirmative finding.'"[42] "Regardless of how the judgment may describe the offense of which defendant was convicted," the court held, "to preclude probation the judgment must reflect a separate and specific entry of an affirmative finding that the defendant used or exhibited a deadly weapon during the commission of the felony offense."[43]

It merits noting that in *Hooks* the court expressly refused to address whether in a bench trial the trial court, having accepted a defendant's plea of guilty to a deadly weapon offense, has discretion to "simply decline[ ] to enter the additional affirmative finding in the judgment."[44] In doing so the Court left intact *Ex parte Lucke*, an earlier decision by the First District Court of Appeals in Houston, which affirmed the judgment of a trial court that had done just that, holding:

> The fact that the offense to which appellant pleaded guilty requires the use of a deadly weapon does not affect [his eligibility for probation]. Appellant admitted his use of the weapon, so the State met its burden of proving all elements of the offense. The trial court, as trier of fact, however, simply declined to enter the additional affirmative finding in the judgment.[45]

As a result, lower Texas appellate courts are divided on how to interpret *Brooks* and *Hooks* as set against *Polk* and *Poe*. Some have held that *Hooks* "made the

---

[42] *Hooks*, 860 S.W.2d at 113-14 (emphasis in original).

[43] *Id.* at 114 n.7.

[44] *Id.* ("Because neither party assert[ed] in [its] respective brief, and the record in this cause [did] not show, that the trial judge 'simply declined to enter the additional affirmative finding in the judgment' . . . [W]e see no reason to expand our grant of review to consider that separate question.") (quoting *Ex parte Lucke*, 742 S.W.2d 818, 820 (Tex. App.—Houston (1st) 1987)).

[45] *Ex parte Lucke*, 742 S.W.2d at 820. Indeed, our court has cited *Lucke* in discussing this Texas practice. *See Sam v. I.N.S.*, 16 F.3d 1216, 1994 WL 57627, at *2 n.2 (5th Cir. Feb. 17, 1994) (unpublished but precedential under 5th Cir. R. 47.5.3).

entry of an affirmative finding of the use of a deadly weapon discretionary in cases where the court is the trier of fact."[46] Others, however, have questioned these efforts "to assuage the apparent conflict between *Poe* and *Hooks*."[47] The Second Court of Appeals in Fort Worth concluded in *Roots* that "[a]lthough the [*Hooks*] court referred to *Poe* and did not purport to overrule it . . . contrary to *Poe* [it] implied that entering [an affirmative deadly weapon] finding need not follow the making of such finding."[48] In *Roots*, the trial court accepted the defendant's plea of guilty to a deadly weapon offense but did not enter a separate affirmative finding. The state later moved for a judgment nunc pro tunc to add the affirmative finding, characterizing its omission as a clerical error, consistent with *Poe*.[49] On appeal, the court elected to follow *Poe* and *Polk* rather than *Hooks*, reasoning that "*Hooks* does not directly answer . . . whether a trial court has the discretion not to enter a deadly-weapon finding in a final judgment of conviction in which the sentence is not suspended."[50] It held "that because the trial court had already found, upon entering the original judgment of conviction, that [the defendant] had used or exhibited a deadly weapon in

---

[46] *Dickson v. State*, 988 S.W.2d 261, 263 (Tex. App.—Texarkana 1998); *see McCallum v. State*, 311 S.W.3d 9, 19 (Tex. App.—San Antonio 2010) ("If *Hooks* has made the entry of an affirmative finding discretionary, it has done so only in cases where the trial judge acts as trier of fact."); *Martinez v. State*, 874 S.W.2d 267, 268 (Tex. App.—Houston (14th) 1994) (same); *Campos v. State*, 927 S.W.2d 232, 236 (Tex. App.—Waco 1996) ("[T]he making of an affirmative [deadly weapon] finding [is] within the court's discretion."); *see also Brooks v. State*, 900 S.W.2d 468, 475 (Tex. App.—Texarkana 1995) (concluding that "*Hooks* is limited to bench trials"); *Beck v. State*, No. 01-93-01067-CR, 1994 WL 620875, at *3 (Tex. App.—Houston Nov. 10, 1994) ("Based on the law established in *Hooks* and *Lucke*, counsel could have reasonably believed that the court had discretion to grant probation.").

[47] *Roots v. State*, 419 S.W.3d 719, 727 n.6 (Tex. App.—Fort Worth 2013); *see also Loud v. State*, 329 S.W.3d 230, 240-41 (Tex. App.—Houston (14th) 2010) (Frost, J., dissenting) ("Even though the statute in question makes no distinction between bench and jury trials, the Texas Court of Criminal Appeals has held that, if the trial court is the fact finder . . . [it] has discretion to not enter a deadly weapon finding in its judgment.").

[48] *Roots*, 419 S.W.3d at 727.

[49] *Id.*

[50] *Id.* at 727 n.6.

committing aggravated assault, the court did not err by later . . . clerically entering that finding through a nunc pro tunc judgment."[51]

Nevertheless, the Court of Criminal Appeals has not overruled or walked back *Brooks* or *Hooks*. And whatever the competing interpretations offered by lower Texas appellate courts, for our purposes the conclusion of the Court of Criminal Appeals on this issue *is* Texas law.[52] Therefore, in Texas a defendant can stand convicted of aggravated assault with a deadly weapon even where the trial court did not enter a separate and affirmative deadly weapon finding.[53] This is true whether the lack of affirmative finding results from a discretionary withholding or a clerical omission. "[T]he purpose of making an affirmative deadly weapon finding is to assist in calculating a prisoner's parole eligibility date."[54] It does not alter the underlying offense of conviction. The absence of an affirmative finding does not amount to a finding that the offense did not involve a deadly weapon. This comports with our prior interpretations of these provisions of Texas law.[55]

---

[51] *Id.* at 727-28.

[52] *Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011).

[53] *See Hooks*, 860 S.W.2d at 113-14.

[54] *Kinkaid v. State*, 184 S.W.3d 929, 930 (Tex. App.—Waco 2006) (citing *Sampson v. State*, 983 S.W.2d 842, 843 (Tex. App.—Houston (1st) 1998); *see Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005) ("While a deadly-weapon finding does affect a defendant's eligibility for probation and parole, it does not alter the range of punishment to which the defendant is subject, or the number of years assessed. A deadly-weapon finding may affect how the sentence is served, but it is not part of the sentence.") (citations omitted).

[55] *See Rutledge v. Thaler*, 344 F. App'x 924, 926 (5th Cir. 2009) ("Contrary to the implication in [the defendant's] argument, the lack of a deadly weapon finding on the judgment does not amount to a finding that he did not use one."); *Sam v. I.N.S.*, 16 F.3d 1216, at *2 n.2 (5th Cir. Feb. 17, 1994) (unpublished); *Roach v. Collins*, 983 F.2d 232, 1993 WL 4519, at *2 (unpublished) ("[T]he court does not legally make an affirmative finding unless the court enters this finding 'separately and specifically in the judgment of the court' . . . In other words, the plea in this case would have allowed the trial court properly to enter an affirmative finding that [the defendant] used a deadly weapon, but the judge had to make that finding separately and specifically, in the judgment, before it legally could be deemed an affirmative finding.") (citations omitted). We note again that although unpublished, *Sam* and *Roach* are

No. 14-10305

IV.

Sanchez-Sanchez was charged with aggravated assault with a deadly weapon under section 22.02(a)(4).[56] By accepting Sanchez-Sanchez's plea of guilty to the offense charged in the indictment, the state trial court convicted him of aggravated assault with a deadly weapon. That the court did not enter a separate and affirmative deadly weapon finding in the written judgment casts no doubt on the fact of his conviction. Because assault attended by the use of a deadly weapon constitutes generic aggravated assault as we have defined it, the conviction qualifies as a predicate "crime of violence" for enhancement under section 2L1.2. The district court did not err in applying the enhancement. The sentence is AFFIRMED.

---

fully binding and precedential because they were issued before January 1, 1996. *See* 5th Cir. R. 47.5.3.

Lower federal courts have also issued interpretations consistent with ours. *See Neal v. Thaler*, No. A-09-CA-830-LY, 2010 WL 2160837, at *4 (W.D. Tex. May 26, 2010) ("The deadly weapon finding bears upon the issue of punishment, namely the availability of court-ordered probation, as well as the issue of parole eligibility.") (citation omitted); *see also Green v. Dretke*, No. 3:03CV795B, 2005 WL 17657, at *7 (N.D. Tex. Jan. 3, 2005) (holding that counsel's status letter indicating "NA" as to eligibility for community supervision did not contravene *Hooks* because "[a] reasonable reading of this letter is that counsel was informing [the defendant] that community supervision was not part of the [s]tate's plea bargain offer.").

[56] *See United States v. Guillen-Alvarez*, 489 F.3d 197, 198-201 (5th Cir. 2007) (concluding the same under a revised version of the Texas statute where, as here, the judgment of conviction stated "aggravated assault with a deadly weapon, to wit: a knife").