**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 30, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-40090

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUSTINO DE JESUS TORRES-DIAZ,    Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, CLEMENT, and PRADO, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Justino DeJesus Torres-Diaz (Torres) was convicted, pursuant to his guilty plea, of illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326(a) and (b). Torres challenges his 33-month sentence, principally contending that the district court erred in holding that his prior Connecticut conviction was for a crime of violence under U.S.S.G. § 2L1.2. We affirm.

**FACTS AND PROCEEDINGS BELOW**

Torres pled guilty to an indictment charging that he was an

alien found unlawfully in the United States on August 7, 2004, after having previously been deported and not having obtained consent to reapply for admission into the United States contrary to 8 U.S.C. §§ 1326(a) and 1326(b).[1]

The Presentence Report (PSR) reflects that Torres, a native and citizen of Guatemala, had lived in Connecticut with his wife and child, and, in a separate arrangement, with a girlfriend he kept on the side. Bridgeport, Connecticut police and medical personnel responded to a domestic violence report on April 2, 2002, which indicated that defendant had raped his girlfriend Gloria Maldonado, and then, when she ran to the phone to dial 911, had hit her over the head with a bottle, leaving her half nude and

---

[1] The written plea agreement included the following:

"The defendant, by entering this plea, also waives any right to have facts that the law makes essential to the punishment either (1) charged in the indictment or (2) proven to a jury or (3) proved beyond a reasonable doubt. The defendant explicitly consents to be sentenced pursuant to the applicable Sentencing Guidelines. The defendant explicitly acknowledges that his plea to the charged offense(s) authorizes the court to impose any sentence authorized by the Sentencing Guidelines, up to and including the statutory maximum under the relevant statute(s).
The Government will recommend:
(a)  that the offense level decrease by 2 levels pursuant to U.S.S.G. § 3E1.1(a) if the defendant clearly demonstrates acceptance of responsibility:
(b)  that the defendant be sentenced at the low end of the applicable guideline range; and
(c)  that the defendant receive an additional 2 level downward departure pursuant to U.S.S.G. § 5K3.1 for early disposition."

unresponsive on a sofa when the police arrived. As a result, Torres was charged with sexual assault in a spousal or cohabiting relationship, Conn. Gen. Stat. § 53a-70b ("Sexual assault in spousal or cohabiting relationship: Class B felony") *and* with assault in the second degree, Conn. Gen. Stat. § 53a-60. Torres was represented by counsel. On June 26, 2003, the charge of sexual assault was dismissed, and, as the PSR states, "the defendant was convicted of the offense of assault 2nd degree, wherein he was sentenced to 5 years' incarceration, suspended for 3 years' probation, in the Fairfield, Connecticut Judicial District Court, Docket Number FBT-CR02-0178143-T." As reflected by Torres's testimony at the sentencing hearing below, he agreed that "everything" in his PSR was "factually correct" and that his June 26, 2003 conviction was pursuant to his plea of guilty.

As a result of this June 26, 2003 conviction, Torres was deported to Mexico on May 7, 2004. He illegally reentered the United States on August 7, 2004.

The PSR, applying U.S.S.G. § 2L1.2, assessed a base offense level of 8, and increased it by 8 levels to a total of 16, under section 2L1.2(b)(1)(C), because the Connecticut conviction was "an aggravated felony." The government on October 21, 2004 filed an objection to the PSR, contending that the Connecticut conviction was for "a crime of violence" and hence the base offense level should be increased by 16 (rather than 8) levels under U.S.S.G. §

3

2L1.2(b)(1)(A)(ii).[2]  In support, the government filed a copy of

the charging document in the Connecticut case, the second (and

final) count of which alleges:

> that at the city of Bridgeport, Fairfield County, on the 7th day of April, 2002, at or about 1:00 a.m., at 163 Laurel Avenue, 2nd floor, the said DEGESUS TORRES, with intent to cause physical injury to one GLORIA MALDONADO,

---

[2] Section 2L1.2(b)(1) provides for base offense level increases as follows:

"(1) Apply the Greatest:

If the defendant previously was deported, or unlawfully remained in the United States, after –

(A)   a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by **16** levels;

(B)   a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by **12** levels;

(C)   a conviction for an aggravated felony, increase by **8** levels;

(D)   a conviction for any other felony, increase by **4** levels, or;

(E)   three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by **4** levels."

The PSR, the district court and the parties below applied the 2003 guidelines, although at sentencing the 2004 version was in effect.  Here, we quote from the 2004 version.  There are no differences between the two which affect any of the issues in this appeal.

4

caused such injury to GLORIA MALDONADO by means of a dangerous instrument, to wit: a glass bottle, in violation of Section 53a-60(A)(2) of the Connecticut General Statutes."[3]

The government contended that this offense – a "violation of section 53a-60(a)(2) of the Connecticut General Statutes" – as a matter of law constitutes the generic offense of "aggravated assault" and is hence a crime of violence under the provision of U.S.S.G. § 2L1.2 note 1.(B)(iii) that, for purposes of section 2L1.2(b)(1),

> "'Crime of violence' means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."

Torres filed a response to the government's objection and his own objection to the PSR, contending that his conviction was neither a crime of violence nor an aggravated felony, and stating that he "objects to the Government's attempts to introduce into evidence the underlying judgment" [sic: apparently referring to the charging document] because "[i]t is improper for the Court to review the underlying judgment because it does not fit within the

---

[3] The first count charges defendant with having committed, at the same time and place, the offense of sexual assault in a cohabiting relationship contrary to 53a-70b of the Connecticut General Statutes by compelling his cohabitator to engage in sexual intercourse by the use of force against such other cohabitator. As noted, this count was dismissed on June 26, 2003.

narrow exception to the categorical approach set forth in *Taylor* *[v. United States*, 110 S.Ct. 2143 (1990)]."

The sentencing hearing began November 23, 2004, and recessed until December 21, to allow the defense to further address whether the Connecticut conviction was for an "aggravated assault" within the meaning of section 2L1.2 note 1.(B)(iii). Defense counsel at these hearings (as in its response to the government's objection to the PSR) took the position that the Connecticut "Assault in the second degree" statute under which defendant was convicted, Conn. Gen. Stat. § 53a-60(a), was neither a crime of violence nor an aggravated assault; and, further, that "any consideration of the indictment under the *Taylor* approach, your Honor, we do not believe it falls under any kind of exception to the categorical approach," and that "we have objected to the government's attempts to admit that indictment. We believe categorical approach means you don't even go there, especially since there was no jury finding in this case."[4] The district court overruled these objections to consideration of the charging document.

The district court addressed Conn. Gen. Stat. § 53a-60, which provides:

"**§ 53a-60. Assault in the second degree: Class D felony**

(a) A person is guilty of assault in the second degree

---

[4] The district court and the parties below refer to the charging document as the "indictment." Actually, it appears to be an information.

when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or (4) for a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness or other physical impairment or injury to another person by administering to such person, without his consent, a drug, substance or preparation capable of producing the same; or (5) he is a parolee from a correctional institution and with intent to cause physical injury to an employee or member of the Board of Pardons and Paroles, he causes physical injury to such employee or member.

(b) Assault in the second degree is a class D felony."[5]

The court concluded that any violation of section 53a-60(a) categorically constituted "aggravated assault" under note 1.(B)(iii) to section 2L1.2. Alternatively, the court found that Torres had been convicted of violating section 53-60(a)(2) and ruled that any violation of section 53-60(a)(2) categorically constituted "aggravated assault" under note 1.(B)(iii).[6]   The court thus

---

[5] Conn. Gen. Stat. § 53a-35a provides that the sentence of imprisonment for a class D felony shall be not less than one year nor more than five years (with respect to certain offenses not involved here the minimum term is greater than one year).

[6] The district court made no express determination as to whether Torres's conviction was for an "offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another" within the final clause of note 1.B(iii).
Torres argued below (and argues here) that merely showing a conviction under § 53a-60(a) without showing the particular subdivision thereof involved, does not satisfy the "has as an

7

determined that Torres, prior to his deportation and reentry, had been convicted of a felony that is a crime of violence, and accordingly increased his base offense level by 16 levels under section 2L1.2(b)(1)(A)(ii). This ultimately resulted, after other unchallenged adjustments, in a guideline sentencing range of 33 to 41 months' imprisonment. Torres was sentenced to 33 months.

## DISCUSSION

### I. Crime of Violence

Torres admits his conviction was for second degree assault under Conn. Gen. Stat. § 53a-60(a). He contends, however, that such a conviction, without a showing of the particular subdivision of section 53a-60(a) violation of which the conviction was for, does not constitute an "aggravated assault" within the meaning of note 1.(B)(iii). This is so, he contends, because at least subdivision (4) of section 53a-60(a) (relating to causing a stupor by administering a drug without consent and not for lawful treatment) does not constitute "aggravated assault." He further contends that the record does not suffice to support the district court's finding that he was convicted under subdivision (2) of section 53a-60(a). The government contends that the record

---

element" concluding clause of note 1.B(iii) because, for example, force is not an element under subdivision (4) of § 53a-60(a). The government does not contend otherwise. We do not reach that question. Nor do we reach the question, not addressed before us by either party, whether conviction for violating subdivision (2) of § 53a-60(a) satisfies the "has as an element" concluding clause of note 1.B(iii).

8

adequately supports the district court's finding that Torres was convicted under subdivision (2) of section 53a-60(a), and that such an offense is an "aggravated assault" within the meaning of note 1.(B)(iii) and is hence a "crime of violence" justifying the 16 level enhancement to Torres's base offense level under section 2L1.2(B)(1)(A)(ii). We agree with the government.[7]

The allegations in the charging document, to wit, that Torres "with intent to cause physical injury to one Gloria Maldonado, caused such injury to Gloria Maldonado by means of a dangerous instrument, to wit: a glass bottle, in violation of Section 53a-60(a)(2) of the Connecticut General Statutes," not only expressly charge a violation of, and *only* of, subdivision (2) of section 53-60(a), but the facts charged exactly fit the offense denounced in subdivision (2)[8] *and* are *not* sufficient to allege an offense under *any* of the other subdivisions of section 53-60(a).[9]

---

[7] We hence do not reach the question of whether, for example, subdivision (4) of § 53a-60(a) constitutes the offense of "aggravated assault."

[8] Section 53a-60(a)(2) provides in relevant part "A person is guilty of assault in the second degree when: (1) . . . .; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm; or (3) . . .; or (4) . . .; or (5) . . . ."

[9] The offenses under subdivisions (1) and (3) each require, *inter alia*, "*serious* physical injury" (emphasis added), which is not alleged in the charging document; subdivision (4) requires, *inter alia*, "administering" of "a drug, substance or preparation," which is not alleged; and subdivision (5), the sole

9

Below, Torres's only objection to consideration of the charging document was that "it does not fit within the narrow exception to the categorical approach set forth in *Taylor [v. United States]*;" "under the *Taylor* approach . . . we do not believe it falls under any kind of exception to the categorical approach;" and, "the categorical approach means you don't even go there, especially since there was no jury finding."

This objection is plainly without merit, as is clear from the opinion in *United States v. Calderon-Pena*, 383 F.3d 254 (5th Cir. 2004) (en banc), which *expressly* states that looking to the charging papers *is* proper for this purpose, viz:

> ". . . whenever a statute provides a list of alternative methods of commission – just as the statute in *Taylor* referred to burglaries of several different types of structures, 495 U.S. at 578 n.1, 110 S.Ct. 2143 – we may look to charging papers to see which of the various statutory alternatives are involved in the particular case. We agree that such a use of the indictment . . . is permissible. *Cf. United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001) (using allegations from an indictment to determine which of several statutory subsections the defendant had violated.)" *Id*. at 258.[10]

remaining subdivision, applies only to one who "is a parolee from a correctional institution" and injures "an employee or member of the Board of Pardons and Paroles," none of which is alleged.

[10] *See also id*. at 258 n.5:
"Many sentencing provisions lack the 'as an element' language at issue here, and we have permitted *broader* uses of charging papers in such cases. *See, e.g.*, *United States v. Rodriguez-Duberney*, 326 F.3d 613, 616–17 (5th Cir. 2003) (allowing for use of the indictment and the underlying charged conduct to determine whether a Travel Act violation under 18 U.S.C. § 1952 was a drug trafficking offense that necessitated a sixteen-

Moreover, in *Shepard v. United States*, 125 S.Ct. 1254 (2005), the Court, in reaffirming *Taylor v. United States*, 110 S.Ct. 2143 (1990), states that in *Taylor*:

> "The Court held that generic burglary could be identified only by referring to charging documents filed in the court of conviction, *or* to recorded judicial acts of that court limiting convictions to the generic category, as in giving instruction to the jury." *Shepard* at 1259 (emphasis added).[11]

That the objection made below in one instance stated "since there was no jury finding" is meaningless. There was no jury finding because Torres's prior conviction was based on his plea of guilty. The use of a charging document for this purpose plainly extends to cases where the prior conviction was by guilty plea, as is demonstrated by *Calderon-Pena*'s above reflected approving citation of our opinions in *Landeros-Gonzales* and *Rodriguez-Duberney*, in each of which the prior conviction was by guilty plea.[12] Moreover,

---

level enhancement pursuant to § 2L1.2(b)(1)(A)(i))." (emphasis added).

[11] It has never been disputed that what the government filed below is a true copy of the charging document filed in the case in the court of conviction, and no objection has ever been made to its authenticity (or authentication).

[12] *See Landeros-Gonzales*, 262 F.2d at 426 ("In the light of Landeros's criminal mischief indictment, it is clear that he pleaded guilty to violating subsection (3) of the statute"); *Rodriguez-Duberney*, 326 F.3d at 617 ("[I]n Duberney's prior conviction, he was charged with, and pleaded guilty to, 'interstate transportation in aid of racketeering with the intent to promote cocaine and marijuana trafficking.' The district court had *only* to look at the charging indictment to find that the prior Travel Act violation was one involving drug

*Shepard* held that *Taylor* applied to prior guilty plea convictions.

Before this court, Torres argues not that the charging document may not be considered, as he did below, but rather contends, for the first time, that it alone is not *sufficient* to show that Torres was convicted under subdivision (2) of section 53a-60(a) because the record does not exclude the theoretical possibility that he pled guilty to something other than that charging document, such as a new or amended charging document or oral allegations at a plea hearing. But it is *not* argued that this *actually* happened – only that the record does not exclude the *theoretical possibility* that it did (and even that was not argued below). There is no dispute that Torres pled guilty. And, at the December 21, 2004 sentencing hearing when Torres stated "when I pled guilty, the attorney was one that told me that I should plead guilty" and his counsel interjected "He's referring to his Connecticut case,"[13] there was no suggestion (then or at any other time) that Torres had pled to anything *other than* the charging document which had been before the court since October and had been the subject of discussion earlier during the December hearing as well as at the November sentencing hearing. And, it is not, and has never been, questioned that Torres was convicted of assault in

trafficking.") (emphasis added).

[13] The court then asked "And who was the victim in that case? Some other person, not his spouse?", to which defense counsel responded "That's correct."

12

the second degree in violation of Conn. Gen. Stat. § 53a-60(a), *not* of some other or lesser offense.[14]

We recognize that "[t]he burden is on the party," here, the prosecution, "seeking to adjust the sentence level," *United States v. Herrera-Solorzano*, 114 F.3d 48, 50 (5th Cir. 1997).  We hold that for purposes of determining which one of the various alternative subdivisions of the statute of a prior conviction is involved, the charging document filed in the prior case unambiguously identifying the one particular subdivision charged suffices to carry that burden, absent anything in the record affirmatively casting doubt on, or creating an ambiguity respecting, that conclusion.  At the very least, this is so where, as here, no claim is made before the district court that the prior conviction was *in actuality* under a different subdivision than that reflected in the charging instrument or *in actuality* the conviction was based on some other, materially different charging document.[15] *See, e.g., Calderon-Pena*, 383 F.3d at 258; *Landeros-Gonzales*, 262 F.3d at 426; *Rodriguez-Duberney*, 326 F.3d at 617.

Torres relies before this court on our decision in *United States v. Turner*, 349 F.3d 833 (5th Cir. 2003).  *Turner*, however,

---

[14] As stated in Torres's opening brief in this appeal "The parties did not dispute that Mr. Torres-Diaz had been convicted of second-degree assault under Conn. Gen. Stat. § 53a-60."

[15] The defendant, of course, may be assumed to know enough concerning what he was convicted of to inform his counsel.  If counsel has doubts he may request a continuance to investigate.

is inapplicable as there the record reflected that "Turner pleaded guilty to a lesser included offense, and was not reindicted on that lesser count" and "there is no document actually charging him with the offense for which he was ultimately convicted," so that "*therefore*, the indictment is not applicable to the analysis of whether the conviction was a conviction of a crime of violence." *Id*. at 836 (emphasis added).[16]  Here, it is undisputed that Torres was charged with *and* convicted of violating Conn. Gen. Stat. § 53a-60(a), *not* any other or lesser included offense.

---

[16] We note that *Turner*, *id*. at 836, relies in part on *United States v. Martin*, 215 F.3d 470 (4th Cir. 2000).  In *Martin* the defendant was indicted for bank robbery and found guilty of the lesser included offense of bank larceny, and the court held that the allegations in the indictment could not be used to establish that defendant was convicted of taking the money *from the person* of any bank employee for purposes of determining whether the conviction was for a crime of violence under U.S.S.G. § 4B1.2(a)(2) under either the has force "as an element" or the presents a serious "risk of physical injury to another" tests. *Id*. at 472-74.

In *United States v. Martinez-Paramo*, 380 F.3d 799 (5th Cir. 2004), we considered whether the prior conviction met the force "as an element" prong of the crime of violence definition under U.S.S.G. § 2L1.2.  For this purpose, we held that, where the record did "not contain an information or indictment," and the district court determined that "the criminal complaint was not a charging document" and did not determine which statutory subsection the prior conviction involved, we would not make that determination ourselves simply on the basis of the complaint, but would instead remand for further development, noting that "the Government stated at oral argument that an information does exist," that "we cannot tell . . . if there was another document [other than the complaint] which stated the charge(s) against him" and that "we do not decide, however, whether an information or indictment is the *only* document which could properly *establish* that he pleaded guilty to a particular subsection . . . ." *Id*. at 803, 805 (emphasis added).  This language suggests that the information alone *would* normally suffice.

14

Having concluded that the record adequately supports the district court's finding that Torres was convicted of violating Conn. Gen. Stat. § 53a-60(a)(2), we now turn to the purely legal question of whether that offense constitutes "aggravated assault" as used in n.1(B)(iii) and is hence a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). *See, e.g., Landeros-Gonzales*, 262 F.3d at 426 ("For the purpose of defining a 'crime of violence,' the different subsections of . . . [the underlying statute of conviction] should be treated as separate offenses"); *Calderon-Pena*, 383 F.3d at 258. Because the guidelines do not define "aggravated assault," this court applies a "common sense approach," defining the enumerated crime by its "generic, contemporary meaning." *United States v. Izaguirre-Flores,* 405 F.3d 270, 275 & n.16 (5th Cir. 2005); *United States v. Dominguez-Ochoa*, 386 F.3d 639, 642-43 (5th Cir.2004). As a source of generic contemporary meaning, we turn to the Model Penal Code and to Professors LaFave and Scott's treatise, Substantive Criminal Law. *Id.* 386 F.3d at 643; *Izaguirre-Flores*, 405 F.3d at 275; *Taylor,* 110 S.Ct. at 2149, 2158. *See also* 2 W. R. LaFave & A. Scott, Substantive Criminal Law, §§ 16.3 & 16.2(d) (2d ed. 2005).

This court endorses a categorical approach to evaluating the correspondence between generic contemporary meaning and the statutory definition of the prior offense. *Calderon-Pena*, 383 F.3d at 257; *Taylor*, 110 S.Ct. at 2159-60. We look to the elements of

the prior offense of conviction, not to the defendant's prior conduct; to the underlying law, not to the underlying facts. *Id.*

Our primary source for the generic contemporary meaning of aggravated assault is the Model Penal Code, which provides:

> "**Aggravated Assault.** A person is guilty of aggravated assault if he:
>
> > (a) attempts to cause *serious* bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
> >
> > (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."
>
> "Aggravated assault under paragraph (a) is a felony of the second degree; aggravated assault under paragraph (b) is a felony of the third degree."

MODEL PENAL CODE § 211.1(2). We compare this generic statute with the Connecticut statute violated by Torres, Conn. Gen. Stat. § 53a-60(a)(2), which provides:

> "(a) A person is guilty of assault in the second degree when: (1) . . .; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm; or (3) . . .; or (4) . . .; or (5) . . . .
>
> (b) Assault in the second degree is a class D felony."

Subsection (2) of Connecticut's second degree assault statute, which requires physical injury by a deadly weapon or a dangerous instrument, is very similar to Model Penal Code's definition of aggravated assault in its section 211.1(2)(b). There are two

16

differences. First, the Connecticut statute allows conviction if the defendant causes injury "to such person or to a *third person*." Conn. Gen. Stat. § 53a-60(a)(2) (emphasis added). On its face, this is broader than the Model Penal Code, which allows conviction only if the defendant "attempts to cause or . . . knowingly causes bodily injury *to another* . . . ." MODEL PENAL CODE § 211.1(2)(b) (emphasis added). These clauses are not materially different, however, because the Model Penal Code expressly adopts the principle of transferred intent. *Id.* at § 2.03(2)(a).[17]

The second apparent difference between the statutes is that while the Model Penal Code requires the use of a "deadly weapon," MODEL PENAL CODE § 211.1(2)(b), the Connecticut statute permits conviction with the use of either a "deadly weapon" or a "dangerous instrument." Reference to the definition sections, however, persuades us that this is essentially a difference of form, not of substance. The Model Penal Code's definition of "deadly weapon" is broad enough to encompass Connecticut's definitions of both "deadly weapon" and "dangerous instrument." The Model Penal Code defines "deadly weapon" as "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known

---

[17] A result is purposely or knowingly caused, notwithstanding the actual result is not within the actor's purpose or contemplation, *if* (among other things) the only difference is "that a different person . . . is injured." Model Penal Code § 2.03(2)(a).

to be capable of producing death or serious bodily injury." MODEL PENAL CODE § 210.0(4). The Connecticut Penal Code defines a "dangerous instrument" nearly the same way. It provides "'[d]angerous instrument' means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ." Conn. Gen. Stat. § 53a-3(7).[18]

With these apparent differences resolved, subsection (2) of the Connecticut statute tracks the Model Penal Codes definition of aggravated assault in its section 211.1(2)(b) almost exactly.[19] For purposes of section 2L1.2 of the sentencing guidelines, Connecticut's section 53a-60(a)(2) is a generic "aggravated assault" and is hence unquestionably a crime of violence.

We reject Torres's complaints concerning his prior Connecticut felony conviction being found a crime of violence.

II. Other Issues

Torres, for the first time on appeal, argues that his sentence is unconstitutional because it was imposed under a mandatory

---

[18] A "deadly weapon" in Connecticut is defined narrowly and it clearly falls within the Model Penal Code's definition of "deadly weapon." Connecticut defines "deadly weapon" as " any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles." Conn. Gen. Stat. § 53a-3(6).

[19] Also, both offenses are felonies. It is not determinative that the Connecticut offense is labeled "assault in the second degree" rather than "aggravated assault."

18

guideline scheme.  The government argues that a provision in Torres's plea agreement (see note 1, *supra*), which was obviously added in anticipation of *Booker*, bars this contention.[20]  Because Torres cannot show that the unpreserved *Fanfan* error affected his substantial rights, we need not reach the question of whether the plea agreement precludes relief on this claim.  Torres was sentenced at the bottom of the applicable guideline range and the district court recommended that the federal sentence run concurrently to any state sentence.  Even so, the record is insufficient to show that the sentencing court likely would have imposed a lower sentence had it used an advisory rather than mandatory guideline scheme.  *See, e.g., United States v. Bringier*, 405 F.3d 310, 317–18 n.4 (5th Cir. 2005); *United States v. Mares*, 402 F.3d 511 (5th Cir.2005).[21]

Torres also asks this court to hold the "felony" and "aggravated felony" provisions of 8 U.S.C. §§ 1326(b)(1) and (b)(2) unconstitutional on the same grounds the Supreme Court rejected in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), but acknowledges that this issue is foreclosed.  *See United States v.*

---

[20] The plea agreement does not use the word "appeal" (or anything related or similar thereto) and at the Rule 11 hearing there was no discussion of any possible waiver of the right to appeal.  See Rule 11(b)(1)(N).

[21] See also, e.g., *United States v. Martinez-Lugo*, 411 F.3d 597, 601 (5th Cir. 2005); *United States v. Creech*, 408 F.3d 264, 271-72 (5th Cir. 2005); *United States v. Holmes*, 406 F.3d 337, 362-66 (5th Cir. 2005).

*Rodriguez-Montelongo*, 263 F.3d 429, 434 (5th Cir. 2001). We likewise reject this complaint.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.