# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40019

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EDWIN ISRAEL LEAL-RAX,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:13-CR-356-1

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Edwin Israel Leal-Rax was convicted of being found illegally in the United States following a previous deportation. Over his objection, the district court applied a 16-level enhancement based on Leal-Rax's 2008 Utah conviction for aggravated assault, which the court deemed a crime of violence. His Guidelines sentencing range was 37 to 46 months of imprisonment, and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the court sentenced him to 37 months of imprisonment. He filed a timely notice of appeal, arguing that his 2008 Utah conviction cannot support the 16-level crime of violence enhancement. For the reasons set out below, we VACATE the 16-level crime of violence enhancement and REMAND for resentencing consistent with this opinion.

## I.     FACTS AND PROCEEDINGS

Leal-Rax pleaded guilty to being an alien found knowingly and unlawfully present in the United States after deportation, in violation of 8 U.S.C. § 1326(a). The probation officer calculated Leal-Rax's total offense level as 22, which the district court reduced to 21 by granting the Government's motion for a third point for acceptance of responsibility. As part of the probation officer's calculations, 16 levels were added to the base offense level of 8 due to Leal-Rax's 2008 Utah conviction of aggravated assault, which the probation officer deemed a crime of violence. Leal-Rax's criminal history score was one, placing him in criminal history category I, and his level-21, category-I Guidelines sentencing range was 37 to 46 months of imprisonment.

A document created by the Utah state court listing the minutes, change of plea, sentence, judgment, and commitment for the 2008 conviction indicated that Leal-Rax pleaded guilty of the third-degree felony offense of aggravated assault and was sentenced to an indeterminate term of imprisonment not to exceed five years. The sentence was suspended, and he was required to serve 30 days in prison and was placed on probation for 36 months. The information charging Leal-Rax alleged that he committed aggravated assault by "us[ing] a dangerous weapon or other means or force likely to produce death or serious bodily injury." A probable cause affidavit incorporated into the information

alleged that a police officer observed Leal-Rax "holding a 2x4 wooden board and yelling at" the victim, who "stated that the defendant kicked in the front door of the residence and hit him several times with a 2x4."

Leal-Rax objected to the 16-level adjustment, arguing, among other things, that the Utah aggravated assault statute was overbroad because it could be violated without causing serious bodily injury and could be violated without use of a deadly or dangerous weapon when serious bodily injury is not caused. Moreover, the statute did not necessarily contain the use of force as an element of the offense.

The district court overruled the objections, explaining that Utah's aggravated assault statute incorporated the underlying assault statute, which required either an attempt to do bodily injury, a threat to do bodily injury, or an act that causes bodily injury, all with force or violence. Because the district court determined that the underlying assault statute effectively required the use, attempted use, or threatened use of violent force, it concluded that the aggravated attempt statute constituted a crime of violence.

On appeal, Leal-Rax contends that the district court erred by concluding that his Utah conviction of aggravated assault was a crime of violence warranting the 16-level adjustment to his offense level. He argues that the Utah aggravated assault statute fails to satisfy the generic definition of aggravated assault and does not necessarily have as an element the use, attempted use, or threatened use of physical force. We agree.

## II.    Standard of Review

This court generally reviews a district court's interpretation or application of the Guidelines de novo and its factual findings for clear error.[1] Because Leal-Rax objected to the crime of violence adjustment, his contentions should be reviewed de novo.[2]

## III.    Analysis

Section 2L1.2(b)(1)(A)(ii) of the Sentencing Guidelines calls for a 16-level increase in a defendant's base offense level if he previously was removed after being convicted of a crime of violence and the conviction receives criminal history points. The application notes to § 2L1.2 provide:

> "Crime of violence" means any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.[3]

It is not necessary for the offense to qualify as an enumerated offense and also have the requisite use of force in order for it to be a crime of violence.[4] Thus, Leal-Rax's Utah aggravated assault offense qualifies for the

---

[1] *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

[2] *See id.*

[3] § 2L1.2, comment. n.1(B)(iii).

[4] *See United States v. Flores-Gallo*, 625 F.3d 819, 821 (5th Cir. 2010).

enhancement if it either amounts to an enumerated offense *or* necessarily has as an element the use, attempted use, or threatened use of physical force.

### A.    Categorical Approach

This court analyzes whether a past conviction is a crime of violence under the Guidelines by applying a categorical approach, which examines "the elements of the statute of conviction rather than a defendant's specific conduct."[5] Because this court looks to the statute of conviction rather than the facts of the crime, this court "must presume that the conviction rested upon nothing more than the least of the acts criminalized."[6] After assuming that the defendant committed the crime in the least culpable manner, this court matches the elements of the state conviction with those of the enumerated offense to determine whether the state conviction is the equivalent of the generic federal offense.[7]

If the state statute of conviction is divisible, however, this court may consult allegations in a charging instrument to which a defendant pleaded guilty.[8] This consultation is allowed "only for the limited purpose of ascertaining which of the disjunctive elements the charged conduct implicated."[9]

---

[5] *United States v. Rodriguez*, 711 F.3d 541, 549 (5th Cir.) (en banc), *cert. denied,* 134 S. Ct. 512 (2013).
[6] *Moncrieffe v. Holder,* 133 S. Ct. 1678, 1684 (2013) (citation and internal quotation marks omitted).
[7] *Id.*
[8] *Rodriguez,* 711 F.3d at 549 n.8 (noting the charging document, terms of a plea agreement, and transcript of the recitation of the factual basis as examples).
[9] *United States v. Miranda-Ortegon*, 670 F.3d 661, 663 (5th Cir. 2012).

## B.     Generic Aggravated Assault

This court uses "a common sense" approach when determining whether a state conviction qualifies as an enumerated offense.[10] Under the common-sense approach, this court decides whether a violation of the statute of conviction constitutes the enumerated offense as it is understood in its "ordinary, contemporary, [and] common meaning."[11] The "primary source for the generic contemporary meaning of aggravated assault is the Model Penal Code."[12] The "statute of conviction need not perfectly correlate with the Model Penal Code; 'minor differences' are acceptable."[13] The Model Penal Code provides:

> A person is guilty of aggravated assault if he:
>
> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
>
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.[14]

"The generic, contemporary meaning of aggravated assault is an assault carried out under certain aggravating circumstances."[15] "Assault, in turn,

---

[10] *United States v. Izaguirre–Flores*, 405 F.3d 270, 273–74 (5th Cir. 2005).

[11] *Id.* at 275 (citation omitted).

[12] *United States v. Esparza–Perez,* 681 F.3d 228, 231 (5th Cir. 2012) (quoting *United States v. Torres–Diaz*, 438 F.3d 529, 536 (5th Cir. 2006)).

[13] *United States v. Mungia–Portillo*, 484 F.3d 813, 817 (5th Cir. 2007).

[14] Model Penal Code § 211.1(2).

[15] *Esparza-Perez*, 681 F.3d at 231 (citation omitted).

requires proof that the defendant either caused, attempted to cause, or threatened to cause bodily injury or offensive contact to another person."[16]

The mens rea required for aggravated assault under the Model Penal Code is extreme recklessness.[17] However, this court has held that ordinary recklessness was sufficient to place a state aggravated assault offense within the Guidelines definition, as long as the state statute otherwise matched up with the generic offense.[18]

The two most common factors raising an assault to an aggravated assault are "the causation of serious bodily injury and the use of a deadly weapon."[19] "Physical force in the context of § 2L1.2 requires force capable of causing pain or injury to another person."[20] Offensive touching, without more, does not constitute the type of violent force typically associated with the generic offense of aggravated assault.[21] However, "the touching of an individual with a deadly weapon creates a sufficient threat of force to qualify as a crime of violence."[22] Moreover, a defendant need not actually employ force; the threatened use of force is sufficient.[23] This court has "not recognized any distinction between a dangerous weapon and a deadly one,"[24] so the reference

---

[16] *Id.* (citations omitted).

[17] *See United States v. Ocampo-Cruz,* 561 F. App'x 361, 364 (5th Cir. 2014) (per curiam) (construing North Carolina statute).

[18] *See United States v. Guerrero-Robledo,* 565 F.3d 940, 947-48 (5th Cir. 2009) (construing South Carolina statute); *Mungia-Portillo*, 484 F.3d at 817 (construing Tennessee statute).

[19] *Mungia-Portillo,* 484 F.3d at 817.

[20] *United States v. Garcia-Figueroa,* 753 F.3d 179, 185 (5th Cir. 2014) (internal quotation marks and citation omitted).

[21] *United States v. Herrera-Alvarez,* 753 F.3d 132, 141 (5th Cir. 2014).

[22] *United States v. Dominguez,* 479 F.3d 345, 348 (5th Cir. 2007).

[23] *Garcia-Figueroa,* 753 F.3d at 185-86.

[24] *United States v. Padilla-Loera*, 559 F. App'x 410, 412 (5th Cir. 2014) (per curiam).

No. 14-40019

to a "dangerous weapon" in Leal-Rax's state charging document is of no concern.

## C.     Applicable Utah Statutes

The version of Utah's aggravated assault statute in place when Leal-Rax was convicted in 2008, Utah Code Ann. § 76-5-103, defined the offense as follows:

> (1) A person commits aggravated assault if he commits assault as defined in Section 76-5-102 and he:
>
> > (a) intentionally causes serious bodily injury to another or;
> >
> > (b) under circumstances not amounting to a violation of Subsection (1)(a), uses a dangerous weapon as defined in Section 76-1-601 or other means or force likely to produce death or serious bodily injury.
>
> (2) A violation of Subsection (1)(a) is a second degree felony.
>
> (3) A violation of Subsection (1)(b) is a third-degree felony.[25]

Thus, commission of an aggravated assault under § 76-5-103 requires commission of an underlying assault, defined under § 76-5-102(1) as

> (a) an attempt, with unlawful force or violence, to do bodily injury to another;
>
> (b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or

---

[25] Utah Code Ann. § 76-5-103 (West 2008).

8

No. 14-40019

> (c) an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another.[26]

Ordinary recklessness suffices as the mens rea for aggravated assault not involving the intentional infliction of serious bodily injury.[27]

Thus, the Utah statute applicable in 2008 on its face was divisible between an assault resulting in serious bodily injury and an assault using "a dangerous weapon . . . or other means or force likely to produce death or serious bodily injury."[28] The statute also could be violated by attempted or threatened assaults using such means.[29]

**D.  Analysis**

The charging information alleged that Leal-Rax "did commit assault as defined in Utah Code 76-5-102 and used a dangerous weapon or other means or force likely to produce death or serious bodily injury." Because Leal-Rax was charged under the "dangerous weapons or other means or force" prong of the statute, § 76-5-103(1)(b), this court need only address that prong of the aggravated assault statute, including the underlying assault statute.

A careful review of the applicable statutes reveals the least culpable act required for a conviction of aggravated assault under § 76-5-103(1)(b) falls outside the generic definition of aggravated assault. The information alleging that Leal-Rax committed aggravated assault by using a dangerous weapon or

---

[26] Utah Code Ann. § 76-5-102(1) (West 2008).
[27] *See State v. McElhaney*, 579 P.2d 328, 329 (Utah 1978); *State v. Loeffel,* 300 P.3d 336, 339 (Utah Ct. App. 2013).
[28] § 76-5-103(1)(a), (b); *State v. Magnum,* 318 P.3d 250, 251-52 (Utah Ct. App. 2013).
[29] *See* §§ 76-5-102(1), -103.

other means or force did not indicate which portion of the underlying assault statute was implicated by Leal-Rax's offense. Violation of this aggravated assault statute requires violation of the underlying assault statute, § 76-5-102, by either an attempted assault, a threatened assault, or "an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another."[30] Leal-Rax argues that the mere creation of risk under this statute is insufficient to qualify as a generic aggravated assault, and it does not necessarily qualify as "the use, attempted use, or threatened use of physical force against the person of another."

### 1.    Generic Assault

In *United States v. Esparza-Perez*, 681 F.3d 228 (5th Cir. 2012), this court analyzed Arkansas's aggravated assault statute and determined that it did not satisfy the requirements for the generic offense of aggravated assault.[31] This court noted the requirement of the Model Penal Code generic offense that a person must cause or attempt to cause serious bodily injury, then contrasted that requirement with the Arkansas statute, which "requires that a defendant engage in conduct that creates a substantial danger of death or serious physical injury."[32] Creation of a substantial danger "does not require *any* contact *or* injury *or* attempt or threat of offensive contact or injury."[33] This

---

[30] § 76-5-102(1).

[31] 681 F.3d at 231-32.

[32] *Id.* at 231.

[33] *Id.* at 231-32 (emphasis in original).

No. 14-40019

court found that the Arkansas statute differed from the Model Penal Code definition of aggravated assault sufficiently to remove it from that definition.[34]

Utah, like Arkansas, allows a conviction for assault (distinct from attempt or threat, which are covered in separate and divisible subsections) based on the mere creation of a risk of injury, which is included in the same subsection with "an act . . . that causes bodily injury to another."[35] For example, in Utah, a defendant was found to have committed assault when he entered a female friend's house, "began to tear things off the wall and ransacked the house" in the friend's presence.[36] Because § 76-5-102(1)(c), like the Arkansas statute, covers conduct falling outside of the generic offense of aggravated assault, it cannot qualify as a crime of violence under the enumerated offense test.[37]

### 2.     Element of Force

Having determined that § 76-5-102(1)(c) in the underlying assault statute does not satisfy the generic offense of aggravated assault, we must next determine whether § 76-5-102(1)(c) necessarily "has as an element the use, attempted use, or threatened use of physical force against the person of another."[38] An assault under the plain terms of § 76-5-102(1)(c) may include

---

[34] *Id.*

[35] *Id.* at 231.

[36] *State v. Wareham*, 143 P.3d 302, 304, 308 (Utah Ct. App. 2006) (internal quotation marks omitted) (reviewing for plain error and citing both the threat and creation of risk portions of the assault statute).

[37] *See Esparza-Perez,* 681 F.3d at 231. The Model Penal Code defines reckless endangerment as "recklessly engag[ing] in conduct which places or may place another person in danger of death or serious bodily injury." Model Penal Code § 211.2. The Model Penal Code does not provide for reckless endangerment as a basis for aggravated assault.

[38] U.S.S.G. § 2L1.2, comment. n.1(B)(iii).

either "an act, committed with unlawful force or violence" that *either* "causes bodily injury to another *or* creates a substantial risk of bodily injury to another."[39] Although the statute requires that "force or violence" be used, the use of the words "force or violence" is not dispositive of whether an offense is a crime of violence.[40] By its plain language, the underlying assault statute does not necessarily require that the unlawful force or violence be directed "against the person of another" for creation of a risk of injury. The analysis is not changed by the aggravated assault statute's requirement that a dangerous weapon be used. Because § 76-5-102(1)(c) does not necessarily require the use of physical force against the person of another, we conclude that it cannot be a crime of violence under that test.

### 3.    Conclusion

In sum, the Utah aggravated assault statute under which Leal-Rax was convicted, § 76-5-103(1)(b), permits conviction under a subsection of the incorporated assault statute, § 76-5-102(1)(c), for an offense which does not qualify as a crime of violence under the Guidelines. We must conclude that the district court erred by using Leal-Rax's 2008 Utah aggravated assault conviction as the basis of a 16-level enhancement under U.S.S.G. § 2L1.2.

### E.    Remedy

We turn now to Leal-Rax's remedy. The Government argues that the sentencing error was harmless in this case. We have held that "the harmless

---

[39] Utah Code Ann. § 76-5-102(1)(c) (West 2008) (emphasis added).

[40] *See United States v. Miranda-Ortegon*, 670 F.3d 661, 663-64 (5th Cir. 2012) (holding that Oklahoma assault and battery statute did not have force as an element despite using the term "force and violence").

error doctrine applies only if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing."[41] We elaborated:

> [A]n incorrect Guidelines calculation will usually invalidate the sentence, even when the district court chose to impose a sentence outside the Guidelines range. Although it may well be that the same explanation the court gave for imposing a sentence outside the miscalculated range *could* also support a sentence outside the correctly calculated range, the harmless error doctrine requires the proponent of the sentence to convincingly demonstrate that the court actually *would* have followed the very same reasoning absent the error. This is a heavy burden.[42]

Here, it is clear that the district court erred in calculating the Guidelines range. With the 16-level enhancement, Leal-Rax's Guidelines range was calculated at 37 to 46 months. Without the 16-level enhancement, Leal-Rax would have been subject to a far lesser Guidelines sentencing range, perhaps 12 to 18 months. The record does not show that the district court would have imposed the same sentence regardless of the Guidelines range. Although the district court stated that it believed the 37-month sentence it imposed would satisfy the 18 U.S.C. § 3553(a) factors even if it improperly characterized the 2008 Utah conviction, the district court also explicitly based its sentence on the lower end of the wrongfully calculated Guidelines range: "The Court believes

---

[41] *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010).
[42] *Id.* at 717 (emphasis in original; footnotes omitted).

13

that, under the circumstances, sentencing within the guideline range is warranted. The Court will sentence you at the low end to a term of 37 months in custody." The Government has failed to carry its "heavy burden" that the district court would have imposed the same sentence absent the error. Accordingly, we vacate and remand for resentencing.

## IV.  CONCLUSION

For the reasons set out above, we VACATE the 16-level crime of violence enhancement and REMAND for resentencing consistent with this opinion.