# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41437

United States Court of Appeals
Fifth Circuit

**FILED**
November 9, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

CHRISTIAN ALVARADO–MARTINEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:15-CR-142-1

Before JONES, SMITH, and PRADO, Circuit Judges.

PER CURIAM:*

Defendant–Appellant Christian Alvarado–Martinez argues that the district court erroneously applied a 16-level "crime of violence" enhancement to his offense calculation under Sentencing Guidelines § 2L1.2.[1] We find the district court did not plainly err. Thus, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] U.S. Sentencing Guidelines Manual § 2L1.2 (U.S. Sentencing Comm'n 2014). This case involves issues relating to the 2014 version of the Sentencing Guidelines. Nothing in this opinion relating to the 2014 Guidelines should be construed to apply to subsequent versions of the Guidelines.

No. 15-41437

## I. BACKGROUND

Christian Alvarado–Martinez is a Mexican citizen. Portions of his criminal history relevant for this appeal follow.

In July 2007, Alvarado–Martinez was convicted in Kentucky of two counts of second-degree assault and sentenced to eight years in custody. He received probation for these offenses in February 2008 and was deported in April 2008.

Alvarado–Martinez later returned to the United States. In May 2012, he was convicted in Kentucky for second-degree wanton endangerment. He was sentenced to five years in custody for this offense and convictions relating to identity theft. In October 2014, he was deported.

He again returned to the United States. United States Customs and Border Protection agents encountered Alvarado–Martinez near the border fence in Progreso, Texas. Upon questioning, Alvarado–Martinez admitted to being present illegally in the United States.

On February 24, 2015, a federal grand jury indicted Alvarado–Martinez of one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a)–(b). Alvarado–Martinez pleaded guilty to the indictment.

A probation officer then prepared a presentence investigation report ("PSR"). The PSR recommended a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Alvarado–Martinez was convicted of two felony crimes of violence—second-degree assault and second-degree wanton endangerment—prior to his deportation and reentry. Applying this enhancement to a Base Offense Level of 8 under U.S.S.G. § 2L1.2(a) and a 3-level reduction under U.S.S.G. §§ 3E1.1(a)–(b) for acceptance of responsibility, the Total Offense Level was calculated at 21. Alvarado–Martinez's Criminal History Score was 8, and his Criminal History Category was IV. The calculated sentence range under the Guidelines was 57 to 71 months.

No. 15-41437

Alvarado–Martinez objected in writing to certain portions of the PSR. His June 25, 2015 objection contested the criminal history points he was assessed for certain prior convictions. His July 17, 2015 objection raised similar criticisms of the criminal history point calculation. He also argued that his wanton endangerment offense involved the use of a "blank gun," which "merit[ed] a downward departure." Alvarado–Martinez also attached—without providing any explanation, context, or annotation—slip copies of two opinions: *United States v. Leal–Rax*, 594 F. App'x 844 (5th Cir. 2014) (unpublished), and *United States v. Ortega–Galvan*, 682 F.3d 558 (7th Cir. 2012).

During his October 7, 2015 sentencing hearing, Alvarado–Martinez objected to his sentence. He reiterated his objections that the PSR incorrectly calculated his criminal history points. He also repeated that the weapon involved in the wanton endangerment offense was "a Hollywood prop." Regarding the attached cases, the hearing transcript reflects that Alvarado–Martinez's counsel said:

> [B]ack in July I had put on the record a case -- who I considered a learned Judge Posner (phonetic) -- that talks about there has to be, I guess, that rare instances where if the – that I'm about to let him speak about -- if that's swasive [sic] that sometimes we can look and back at certain cases because of the import they have in a post-booker environment.

Counsel did not discuss the cases further. Alvarado–Martinez himself then testified about the events surrounding his wanton endangerment conviction. The district court imposed a sentence of 48 months' imprisonment with no term of supervised release. The sentence was below the Guidelines range.

On October 21, 2015, Alvarado filed a pro se notice of appeal. Final judgement was entered on October 23, 2015.

No. 15-41437

## II. JURISDICTION

Alvarado–Martinez appeals his sentence in a criminal case involving a federal offense. He timely filed his notice of appeal. *See* Fed. R. App. P. 4(b)(2) ("A notice of appeal filed after the court announces a decision, sentence, or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."). The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III. STANDARD OF REVIEW

We review the 16-level sentence enhancement for plain error because Alvarado–Martinez did not object to the enhancement before the district court. *See United States v. Medina–Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003) ("When a defendant objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal for plain error only.").

Plain error is appropriate, notwithstanding Alvarado–Martinez's protests to the contrary. Alvarado–Martinez contends that he objected to the enhancement by attaching to his July 17 PSR objection copies of opinions from two cases pertaining to how a "crime of violence" is defined for purposes of a sentence enhancement under U.S.S.G. § 2L1.2. He admits that his objections did "not expressly state that [he] believes the PSR incorrectly identified his prior Kentucky convictions as 'crimes of violence.'" But he believes that attaching relevant legal authority to the objections is "sufficient to have placed the District Court on notice that he intended to dispute whether his prior Kentucky convictions even qualify as crimes of violence."

We disagree. "To preserve an issue for review on appeal, the defendant's objection must fully apprise the trial judge of the grounds for the objection so that evidence can be taken and argument received on the issue." *United States*

*v. Wikkerink*, 841 F.3d 327, 331 (5th Cir. 2016) (quoting *United States v. Musa*, 45 F.3d 922, 924 n.5 (5th Cir. 1995)). It is not enough to file a written objection and attach legal authority that raises a separate objection. Failing to explain the separate objection in briefing or during the sentencing hearing compounds the problem. Objections must be raised clearly "so that the district court may correct itself and thus, obviate the need for our review." *United States v. Mondragon–Santiago*, 564 F.3d 357, 361 (5th Cir. 2009) (quoting *United States v. Rodriguez*, 15 F.3d 408, 414 (5th Cir. 1994)). We do not require the district court to spot all conceivable objections that the party may—but did not explicitly—raise. Thus, we conclude that Alvarado–Martinez failed to apprise the district court of his objection to the 16-level enhancement.

However, as Alvarado–Martinez urges in the alternative, we can review the 16-level enhancement for plain error. Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). Plain-error review involves four prongs:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations, alterations, and internal quotations omitted).

No. 15-41437

## IV. DISCUSSION

Alvarado–Martinez asserts that he should not be subject to a 16-level enhancement under U.S.S.G. § 2L1.2 because neither of his two Kentucky convictions qualifies as a "crime of violence." The Government agrees that the second-degree wanton endangerment conviction does not qualify as a "crime of violence." That leaves Alvarado–Martinez's second-degree assault conviction. Thus, the issue is whether the district court plainly erred in categorizing Alvarado–Martinez's second-degree assault conviction as a "crime of violence." We conclude that the district court did not plainly err in treating the second-degree assault conviction as a "crime of violence." Thus, we affirm.

### A.    Framework for Determining Whether Kentucky's Second-Degree Assault Offense Qualifies as a "Crime of Violence"

The district court enhanced Alvarado–Martinez's sentence under U.S.S.G. § 2L1.2(b)(1)(A). He received the 16-level enhancement because he illegally reentered the United States after his previous deportation for a felony conviction. U.S.S.G. § 2L1.2(b)(1)(A) lists felonies that could qualify one for the enhancement. One qualifying felony is a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The Guidelines' commentary defines "crime of violence" as any offense in an enumerated list,[2] including "aggravated assault;" and "any other offense under federal, state, or local law that has as an element the use,

---

[2] The list of enumerated offenses includes:

[A]ny of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, [and] burglary of a dwelling.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

The Government asserts that Kentucky's second-degree assault statute can qualify as a "crime of violence" in either of two ways. First, Kentucky's second-degree assault offense is materially indistinguishable from an "aggravated assault," which is an enumerated "crime of violence." In the alternative, the Government argues that the Kentucky statute outlines an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

We first address whether Alvarado–Martinez's second-degree assault conviction qualifies as an "aggravated assault." We apply the categorical approach established in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether his prior state conviction qualifies as a "crime of violence." *United States v. Rodriguez*, 711 F.3d 541, 549 (5th Cir. 2013) (en banc). This requires us to compare the "generic, contemporary meaning" of "aggravated assault" to the elements of Kentucky's second-degree assault offense. *See id.* (quoting *United States v. Dominguez–Ochoa*, 386 F.3d 639, 642–43 (5th Cir. 2004)). We follow a "common sense" approach. *United States v. Hernandez–Rodriguez*, 788 F.3d 193, 195 (5th Cir. 2015). The generic, contemporary meaning emerges from surveying "the Model Penal Code, the LaFave and Scott [criminal law] treatises, modern state codes, and dictionary definitions." *United States v. Esparza–Perez*, 681 F.3d 228, 229 (5th Cir. 2012) (citing *United States v. Iniguez–Barba*, 485 F.3d 790, 791 (5th Cir. 2007)). "Our primary source for the generic contemporary meaning of aggravated assault is the Model Penal Code." *United States v. Torres–Diaz*, 438 F.3d 529, 536 (5th Cir. 2006). If Kentucky's second-degree assault statute proscribes behavior beyond the scope of the generic, contemporary meaning of "aggravated

assault," then Alvarado–Martinez's conviction under the statute cannot constitute a "crime of violence." *See United States v. Fierro–Reyna*, 466 F.3d 324, 327 (5th Cir. 2006).

**B.    Whether Kentucky's Second-Degree Assault Offense Qualifies as a "Crime of Violence"**

Alvarado–Martinez asserts that Kentucky's statute proscribes behavior beyond the generic definition of "aggravated assault," so the second-degree assault offense does not match the generic definition of "aggravated assault." Thus, his conviction cannot be used to enhance his sentence because the underlying crime was not a "crime of violence." The Government contends that Kentucky's second-degree assault offense matches the generic definition of "aggravated assault." Thus, because the offense matches an enumerated "crime of violence," Alvarado–Martinez's second-degree assault conviction can properly serve as the basis for enhancing his sentence.

Evaluating these arguments requires comparing the Model Penal Code's "aggravated assault" offense with Kentucky's second-degree assault offense. *See Torres–Diaz*, 438 F.3d at 536. The Model Penal Code explains that a person has committed "aggravated assault" when he:

> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
> (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.

Model Penal Code § 211.1(2). Kentucky Statute § 508.020(1) establishes that a person may be guilty of second-degree assault when:

> (a) He intentionally causes serious physical injury to another person; or
> (b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or

8

(c) He wantonly causes serious physical injury to another person
by means of a deadly weapon or a dangerous instrument.

Ky. Rev. Stat. § 508.020(1).

Comparing these, Alvarado–Martinez argues that Kentucky's second-degree assault offense does not categorically match generic "aggravated assault" because Kentucky's statute leaves open the possibility that someone may be guilty of second-degree assault for "wantonly" injuring another. This, he asserts, establishes that someone may be convicted under the Kentucky statute on the basis of a less culpable mental state than generic "aggravated assault" requires. Alvarado–Martinez identifies no Fifth Circuit case law that supports his interpretation.

Instead, Alvarado–Martinez cites Fourth and Ninth Circuit opinions to support his argument. Relying on *United States v. Barcenas–Yanez*, 826 F.3d 752 (4th Cir. 2016) and *United States v. Garcia–Jimenez*, 807 F.3d 1079 (9th Cir. 2015), he asserts that a "wanton" mental state is synonymous with a "reckless" mental state and that generic "aggravated assault" requires a more culpable mental state than "recklessness." By proscribing a "reckless" assault, Kentucky's statute is overbroad. Thus, according to him, a 16-level sentence enhancement is improper because Kentucky's statute does not match the generic "aggravated assault" offense.

The Government contends that including the mental state of "recklessness" in a criminal assault statute does not disqualify that statute from matching the generic "aggravated assault" offense. According to the Government, our case law supports the proposition that including the mental state of "recklessness" in an aggravated assault statute cannot render the statute overbroad. *See United States v. Mungia–Portillo*, 484 F.3d 813, 817 (5th Cir. 2007) ("We infer from this that a defendant's mental state in committing an aggravated assault, whether exhibiting 'depraved heart' recklessness or

'mere' recklessness, is not dispositive of whether the aggravated assault falls within or outside the plain, ordinary meaning of the enumerated offense of aggravated assault."); *see also United States v. Villasenor–Ortiz*, 675 F. App'x 424, 428 (5th Cir. 2017), *cert. denied*, No. 16-9422, 2017 WL 2405929 (U.S. Oct. 2, 2017) (rejecting the reasoning of the Fourth and Ninth Circuits and reaffirming that an aggravated assault statute requiring a mental state of recklessness can match the generic aggravated assault offense). The Government emphasizes that instead of focusing on the mental state required, our precedent looks at whether the "aggravated assault statute includes the two most common aggravating factors, the causation of serious bodily injury and the use of a deadly weapon" to determine if the statute matches the generic "aggravated assault" offense. *Mungia–Portillo*, 484 F.3d at 817.

The Government asserts that § 508.020(1)(c) includes the two most common aggravating factors for an aggravated assault statute: causation of serious bodily injury and use of a deadly weapon. According to the Government, the statute's phrase "serious physical injury" is substantially similar to "serious bodily injury" in the Model Penal Code. And the language "deadly weapon or dangerous instrument" aligns with the term "deadly weapon" in the Model Penal Code. Moreover, according to the Government, slight differences between the Model Penal Code offense and the Kentucky offense are "not enough to take the defendant's crime out of the common sense definition of the enumerated offense of aggravated assault." *United States v. Ramirez*, 557 F.3d 200, 207 (5th Cir. 2009); *see also United States v. Rojas–Gutierrez*, 510 F.3d 545, 549 (5th Cir. 2007) (emphasizing that, applying a common sense approach, "[e]ven if the fit between the enumerated offense of aggravated assault and the ordinary, contemporary, and common meaning of aggravated assault may not be precise in each and every way, slight imprecision would not preclude our finding a sufficient equivalence."). Thus, the Government

concludes that Kentucky's second-degree assault offense corresponds to the Model Penal Code's definition of "aggravated assault." And, following that conclusion, Kentucky's second-degree assault offense matches the generic, contemporary meaning of "aggravated assault." Ultimately, we need not decide which party's interpretation is correct.

## C.   The District Court Did Not Plainly Err

Even assuming the court erred in treating Kentucky's second-degree assault offense as matching the generic "aggravated assault" offense, the error was not plain.

Satisfying the second prong of plain error review requires showing that the district court's error was "clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135. We are reluctant to find plain error when no binding precedent contradicts the district court's holding. *See United States v. Garcia–Gonzalez*, 714 F.3d 306, 318 (5th Cir. 2013); *see also United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir. 2015) (recognizing that "lack of binding authority is often dispositive in the plain-error context"). If a party's theory of the case requires extending our court's precedent, "any potential error could not have been 'plain.'" *United States v. Hull*, 160 F.3d 265, 272 (5th Cir. 1998).

The district court could not rely on binding Fifth Circuit case law interpreting Kentucky's second-degree assault statute for the purposes of a U.S.S.G. § 2L1.2 enhancement. The court treated the statute as matching the generic "aggravated assault" offense. Our precedents support this conclusion. Or, at the very least, no binding Fifth Circuit precedent contradicts this conclusion. Alvarado–Martinez cites out-of-circuit case law that may suggest a different result. But adopting the reasoning of these other circuits would have required the district court to extend—and possibly abrogate—our precedent. We cannot conclude that the district court plainly erred by declining to follow

such a path. Accordingly, Alvarado–Martinez is unable to satisfy the second prong of plain error review. Thus, we need not evaluate the other prongs.

## V. CONCLUSION

The district court did not plainly err in treating Alvarado–Martinez's second-degree assault conviction as an enumerated "crime of violence." Therefore, we AFFIRM that Alvarado–Martinez is subject to a 16-level sentence enhancement under U.S.S.G. § 2L1.2(b)(1)(A).